# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

The Pregnancy Care Center of Rockford and the Diocese of Springfield in Illinois,

     Plaintiffs,

v.

James Bennett, in his official capacity as Director of the Illinois Department of Human Rights, and Kwame Raoul, in his official capacity as Illinois Attorney General,

     Defendants.

No. 3:25-cv-50127
Hon. Rebecca R. Pallmeyer

## DEFENDANTS' COMBINED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS & RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

KWAME RAOUL
*Attorney General of Illinois*

Karyn L. Bass Ehler
Sarah J. Gallo
Holly Berlin
Emily Hirsch
Office of the Illinois Attorney General
Counsel for Defendants

# Table of Contents

Table of Authorities............................................................................................ iv

Introduction........................................................................................................ 1

Background ......................................................................................................... 2

I.    The Illinois Human Rights Act protects against employment discrimination. .................. 2

II.   The Amendments extend the Act's protections to reproductive health decisions.............. 3

III.   Plaintiffs challenge the Amendments under the First and Fourteenth Amendments. ..... 3

Argument ........................................................................................................... 5

I.    Plaintiffs' Complaint should be dismissed under Rule 12(b)(1)....................................... 5

   A.   Plaintiffs lack standing to bring this pre-enforcement challenge under Rule 12(b)(1)... 5

   B.   Plaintiffs did not plausibly allege a likelihood of violating the Act by engaging in proscribed conduct. ....................................................................................... 7

      1.   Plaintiffs' alleged employment violations are too speculative to establish any conflict with the Act.......................................................................................... 7

      2.   The Act's notice requirement is unchanged by the Amendments and Plaintiffs did not allege that they fail to comply with the Act. ................................................ 10

      3.   Plaintiffs did not plausibly allege that compliance with the Amendments undermines their organizational missions and establishes an injury in fact........................................ 11

   C.   Plaintiffs' claims are prudentially unripe. .................................................... 13

   D.   If the Complaint is not dismissed, preliminary discovery into Plaintiffs' standing is necessary to determine jurisdiction................................................................ 14

II.   The Complaint failed to state a claim under Rule 12(b)(6). ............................................ 15

   A.   The Complaint failed to state an expressive association claim................................... 16

      1.   There is no right to expressive association in employment decisions. ..................... 16

      2.   Employees' healthcare decisions do not plausibly prevent Plaintiffs from advocating their viewpoints........................................................................................ 18

      3.   The State has a compelling interest in preventing invidious discrimination that outweighs any incidental effect on Plaintiffs' associational rights. ............................. 21

   B.   The Complaint failed to state a Free Speech claim...................................... 21

      1.   Hiring employees, providing benefits, and making reasonable accommodations are professional conduct, not protected speech. ................................................ 22

      2.   Plaintiffs did not plausibly allege that the Act's prohibition on harassment violates the Free Speech Clause. ................................................................. 23

3.    The notice requirement governs commercial speech and withstands rational basis review. .................................................................................................................. 25

4.    The Act is not viewpoint discriminatory. ................................................. 26

C.    The Complaint failed to state a Free Exercise claim. ..................................... 27

D.    Count V failed to state an Equal Protection claim ........................................ 30

E.    Count III failed to state a claim on which relief can be granted. .................... 32

III.    Plaintiffs' Motion for a Preliminary Injunction should be denied. .............................. 34

A.    There is no likelihood of success on any of Plaintiffs' First Amendment claims. ........ 35

B.    Plaintiffs will not suffer irreparable harm without a preliminary injunction. ............... 36

C.    Equitable factors weigh against a preliminary injunction. ............................................. 39

Conclusion ................................................................................................................................ 40

# Table of Authorities

## Cases

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014)........................ 14

*All. for Hippocratic Med.*, 602 U.S.................................................................. 13

*Apollo v. Stasinopoulos*, No. 18-cv-6475, 2022 WL 1092227 (N.D. Ill. Apr. 12, 2022).............. 43

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 5

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987)................ 19

*Billard v. Charlotte Catholic High Sch.*, 2021 WL 5037531 (W.D.N.C. Sept. 3, 2021) ............. 19

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) .................................................. 18, 24

*Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) .................................................... 6

*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648 (10th Cir. 2002).................... 41

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014)........................................ 40

*Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014) ....................................... 5

*Carrero v. City of Chi.*, No. 23-cv-650, 2024 WL 22099 (N.D. Ill. Jan. 2, 2024) ...................... 36

*Cassell v. Snyders*, 990 F.3d 539 (7th Cir. 2021) ................................................ 42, 45

*Choose Life Ill., Inc. v. White*, 547 F.3d 853 (7th Cir. 2008) ...................................... 31

*Christian Healthcare Ctr., Inc. v. Nessel*, No. 1:22-cv-00787, 2022 WL 20112900 (W.D. Mich.

    Mar. 29, 2023)........................................................................................ 38

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561

    U.S. 661 (2010)....................................................................................... 34

*Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006) .............................. 20, 23

*CompassCare v. Cuomo*, 465 F. Supp. 3d 122 (N.D.N.Y. 2020) ................................ 39

*CompassCare v. Hochul*, 125 F.4th 49 (2d Cir. 2025) ........................................ 20, 26

*Crawford v. United States*, 796 F.2d 924 (7th Cir. 1986) ................................................ 17

*Crosspoint Church v. Makin,* 719 F. Supp. 3d 99 (D. Me. 2024) ................................... 48

*Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968 (7th Cir. 2021) ........... 38

*Department of Education v. Brown*, 600 U.S. 551 (2023) ............................................. 5

*Doe v. Univ. of S. Ind.*, 43 F.4th 784 (7th Cir. 2022) .......................................... 43, 47

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................... 44

*Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872 (1990) ....................... 31

*Erznoznik v. City of Jacksonville*, 422 U.S. 205(1975) ........................................... 27

*Evergreen Assoc., Inc. v. City of N.Y.*, 2025 WL 416903 (E.D.N.Y. Feb. 6, 2025) .............. , 11, 17

*Evergreen Assoc., Inc. v. Hochul*, 2025 WL 359074 (N.D.N.Y. Jan. 31, 2025) ....................... , 17

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ............................................. 7

*Finch v. Treto*, 606 F. Supp. 3d 811 (N.D. Ill. 2022) ............................................. 15

*Finch v. Treto*, 82 F.4th 572 (7th Cir. 2023) ..................................................... 15

*Fulton v. City of Phila., Pa.*, 593 U.S. 522 (2021) ............................................... 33

*Garrick v. Moody Bible Inst.*, 95 F.4th 1104 (7th Cir. 2024) ...................................... 40

*Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321 (7th Cir. 2022) ............................. 46

*Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000).......................... 41

*Hill v. Colorado*, 530 U.S. 703 (2000).............................................................. 28

*Hinrichs v. Whitburn*, 975 F.2d 1329 (7th Cir. 1992) .............................................. 16

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)..................................................... 18

*Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631 (7th Cir. 2017)................................ 32

*Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020).............................. , 45, 47

*Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625 (7th Cir. 2023)......................... 6

*Lake Butler Apparel Co. v. Sec'y of Labor*, 519 F.2d 84 (5th Cir. 1975) ...................................... 30

*Legal Aid Chi. v. Hunter Props., Inc.*, No. 23-CV-4809, 2024 WL 4346615 (N.D. Ill. Sept. 30, 2024) ............................................................................................................................. 7

*Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015) ............................ 34

*Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991) ................................................................................ 41

*Locke v. Davey*, 540 U.S. 712 (2004) .......................................................................................... 37

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................................... 42

*McMahon v. World Vision Inc.*, 704 F. Supp. 3d 1121 (W.D. Wash. 2023) ................................. 20

*Metro. Milwaukee Ass'n of Commerce v. Milwaukee County*, 235 F.3d 879 (7th Cir. 2003) ....... 15

*Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765 (7th Cir. 2011) .................................. 44, 46

*Munaf v. Green*, 553 U.S. 674 (2008) .......................................................................................... 42

*N.Y. State Club Ass'n, Inc., v. City of N.Y.*, 487 U.S. 1 (1988) ..................................................... 19

*Nat'l Ass'n of Mfrs. v. Perez*, 103 F. Supp. 3d 7 (D.D.C. 2015) .................................................. 30

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ................................................ 16

*Neely-Bey Tarik-El v. Conley*, 912 F.3d 989 (7th Cir. 2019) ..........................................................

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ....................................................................................... 37

*O'Connell v. U.S. Conf. of Cath. Bishops*, 134 F.4th 1243 (D.C. Cir. 2025) .............................. 40

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......................................................... 18

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020) ....................................... 39

*Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805 (E.D. Mo. 2018) ................................. 44

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501 (7th Cir.) ... 6

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) ................................................................. 36

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002 (7th Cir. 2021) ......... 6

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) .......................................................... 27

*Reget v. City of La Crosse*, 595 F.3d 691 (7th Cir. 2010) ...................................... 37

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ........................................................ 19

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ......... 14, 27, 46

*Schirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010) ................................................. 6

*Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 58 (9th Cir. 2024) ........................... 40

*Slattery v. Hochul*, 61 F.4th 278 (2d. Cir. 2023) .................................... 20, 26, 48

*Smith v. Ill. Dep't of Transp.*, 936 F.3d 554 (7th Cir. 2019) ................................... 28

*Soc'y of Divine Word v. U.S. Citizenship & Immigr. Servs.*, 129 F.4th 437 (7th Cir. 2025) ........ 32

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ...................................................... 26

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 496 F. Supp. 3d 1195 (S.D. Ind. 2020) ......................................................................................................... 19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ....................................... 13

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971) ......................... 36

*Tagami v. City of Chi.*, 875 F.3d 375 (7th Cir. 2017) ............................................. 25

*The Bail Project, Inc. v. Ind. Dep't of Ins.*, 76 F.4th 569 (7th Cir. 2023) ................. 26

*UAW-Labor Emp. & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003) ........... 30

*United States v. Indianapolis Baptist Temple*, 224 F.3d 627 (7th Cir. 2000) ............ 32

*United States v. Lee*, 455 U.S. 252 (1982) .............................................................. 34

*United States v. O'Brien*, 391 U.S. 367 (1968) ....................................................... 35

*Vision Church v. Vill. of Long Grove*, 468 F.3d 975 (7th Cir. 2006) ....................... 37

*West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937) ........................................... 21

*White v. United States*, 8 F.4th 547 (7th Cir. 2021) ................................................ 43

*Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640 (7th Cir. 2013) .................................................. 30

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985) .........

**Statutes & Treatises**

42 U.S.C. § 2000e-2 ................................................................................................................. 21

5B Fed. Prac. & Proc. Civ. § 1350 ........................................................................................... 18

775 ILCS 5/1-102 (A) ............................................................................................................... 30

775 ILCS 5/1-103 ................................................................................................................ 1, 3, 31

775 ILCS 5/2-101 ..................................................................................................................... 34

775 ILCS 5/2-101(A) ............................................................................................................. 3, 16

775 ILCS 5/2-102 ............................................................................................................... passim

775 ILCS 5/2-104 ..................................................................................................................... 16

775 ILCS 5/3-106 ..................................................................................................................... 37

775 ILSC 5/7-101 ....................................................................................................................... 2

775 ILSC 5/7A-102 ..................................................................................................................... 2

775 ILSC 5/8-111 ....................................................................................................................... 2

820 ILCS 105 ............................................................................................................................ 21

Ill. Pub. Act 103-785 .............................................................................................................. 1, 3

Ill. Pub. Act 88-178, eff. August 4, 1993 ................................................................................... 2

Ill. Pub. Act 93-1078, eff. Jan. 1, 2006 ...................................................................................... 2

Ill. Pub. Act 98-1050, eff. Jan 1, 2015 .............................................................................. 2, 4, 16

**Introduction**

The Illinois Human Rights Act ("the Act") has long protected Illinois residents from discrimination on the basis of certain characteristics, including race, sex, religion, sexual orientation, and pregnancy. 775 ILCS 5/1-103(Q). This suit challenges amendments to the Act that extend and build on these fundamental, long-settled protections to guard against discrimination and harassment based on an individual's reproductive health decisions. Ill. Pub. Act 103-785 (amending 775 ILCS 5/1-103(Q)) ("the Amendments"). The Amendments ensure that individuals in Illinois are not wrongly subjected to unlawful discrimination.

Plaintiffs are two religiously-motivated organizations that oppose certain reproductive health choices, such as abortion and contraception. They filed this pre-enforcement challenge to the Amendments, contending that they violate Plaintiffs' rights under the First and Fourteenth Amendments by preventing them from taking certain discriminatory or harassing employment actions. Plaintiffs filed a Motion for a Preliminary Injunction asking the Court to enjoin Defendants' enforcement of the Act so as to permit them to engage in discrimination and harassment against employees or applicants based on their reproductive health decisions.

As a threshold matter, Plaintiffs lack standing to bring this pre-enforcement challenge because they failed to allege more than a speculative possibility of enforcement or an injury to their core organizational activities. Moreover, on the merits, Plaintiffs' First Amendment claims fail as a matter of law because the Act does not impermissibly regulate expressive association, free speech, or free exercise of religion, and their Equal Protection Clause claim fails because the Act is facially neutral with respect to religion. Plaintiffs' Complaint should therefore be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and their Motion for a Preliminary Injunction should be denied.

## Background

## I.    The Illinois Human Rights Act protects against employment discrimination.

The Act was originally enacted in 1979 to combat discrimination in several areas, including employment. The purpose of the Act is "[t]o secure for all individuals within Illinois the freedom from discrimination based on" protected characteristics. 775 ILCS 5/1-102(A). Section 5/2-102 makes it a civil rights violation "[f]or any employer to refuse to hire" or to engage in certain employment actions on the basis of unlawful discrimination. "Employer" is defined as any person employing one or more employees, though the Act exempts "any place of worship, religious corporation, [or] association . . . with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such place of worship, corporation, [or] association." *Id.* at § 5/2-101(B).

The term "unlawful discrimination" is defined in Section 5/1-103. The Illinois General Assembly has repeatedly amended this definition to extend protections under the Act, including protections from discrimination and harassment based on military status (Ill. Pub. Act 88-178, eff. August 4, 1993), sexual orientation (Ill. Pub. Act 93-1078, eff. Jan. 1, 2006), and pregnancy, childbirth, and related conditions (Ill. Pub. Act 98-1050, eff. Jan 1, 2015).

Defendant Director James Bennett of the Illinois Department of Human Rights ("the Department") has statutory authority to investigate violations and initiate charges under the Act in adjudicative proceedings before the Illinois Human Rights Commission and Illinois Circuit Court. 775 ILCS §§ 5/7-101, 5/7A-102, 5/8-111. Defendant Illinois Attorney General Kwame Raoul is also empowered to investigate and initiate charges based on a pattern and practice of discrimination prohibited by the Act. *Id.* at § 5/10-104.

## II. The Amendments extend the Act's protections to reproductive health decisions.

In 2024, the General Assembly again amended the Act, this time explicitly prohibiting discrimination based on "reproductive health decisions." Ill. Pub. Act 103-785 (amending 775 ILCS 5/2-101(A)). The statute defines this term as "decisions regarding the person's use of: contraception; fertility or sterilization care; assisted reproductive technologies; miscarriage management care; healthcare related to the continuation or termination of pregnancy; or prenatal, intranatal, or postnatal care." 775 ILCS 5/1-103(O-2). Introducing the measure in the Illinois Senate, the bill's sponsor cited Illinois's interest in "leading among our states in ensuring and protecting individual reproductive rights and bodily autonomy," including choices that "extend[] beyond that which traditionally falls under the term pregnancy." ECF 1 ("Compl.") Ex. 11 at 73.

## III. Plaintiffs challenge the Amendments under the First and Fourteenth Amendments.

Plaintiffs are two religiously-motivated organizations that filed suit in March 2025, alleging that the Amendments' prohibition on reproductive health discrimination, as applied to them, violates their rights under the First and Fourteenth Amendments. *See generally* Compl. Plaintiff Pregnancy Care Center of Rockford ("PCC") is a non-profit organization that provides certain medical services and pro-life counseling to pregnant individuals. *Id.* ¶ 38. PCC has about 14 employees, who are allegedly required to adhere to the organization's Christian beliefs, including its views about abortion. *Id.* ¶¶ 49–53. In job listings for two open positions attached to the Complaint, PCC requires that any applicant be "a committed Christ-follower who demonstrates a personal relationship with Christ" and "exhibits a strong pro-life commitment and upholds a lifestyle of sexual purity." *Id.* Ex. 5, 6.

Plaintiff Diocese of Springfield, Illinois, is a non-profit religious organization of the Catholic Church. Compl. ¶¶ 71–73. The Diocese opposes abortion and certain other reproductive

health care, including contraception, sterilization, certain fertility treatments, ovum donation, and surrogacy. *Id.* ¶ 74. Diocesan employees are allegedly required to "represent the Catholic Church" through their conduct. *Id.* ¶ 82. In job listings for two open positions attached to the Complaint, the Diocese requires that any applicant be a "[p]racticing Catholic in full communion with the teachings of the Church." *Id.* Ex. 8, 9.

Plaintiffs sued to challenge several provisions of the Act that they contend violate their rights under the First and Fourteenth Amendments. Their principal targets are the 2024 Amendments that make it unlawful to discriminate on the basis of reproductive health decisions in employment, including with respect to hiring, termination, benefits, and workplace harassment. Compl. ¶¶ 9–11, 13. Plaintiffs also challenge longstanding provisions of the Act which were not amended by the 2024 bill, including Section 5/2-102(K), which requires employers to post a notice in the workplace and include language in employee handbooks apprising employees of their rights under the Act. *Id.* ¶ 14. Finally, Plaintiffs take issue with what they refer to as the "Accommodation Clause," *id.* ¶ 156, which specifically requires employers to accommodate employees' medical needs related to pregnancy and childbirth. Both the notice requirement and the accommodation requirement have been in effect since 2015. *See* Ill. Pub. Act 98-1050. Plaintiffs now contend that these anti-discrimination and anti-harassment requirements violate their rights to expressive association, free speech, free exercise of religion, and "religious autonomy" under the First Amendment, as well as their right to equal protection under the Fourteenth Amendment. They seek as-applied injunctive and declaratory relief to prevent the Act from being enforced against them with respect to their speech and conduct related to reproductive health decisions. Compl. ¶¶ 57–58.

In April 2025, Plaintiffs filed a Motion for a Preliminary Injunction asking the Court to "enjoin[] Defendants from investigating or otherwise enforcing the Act against [them] related to [their] speech and conduct about reproductive health decisions." ECF 29 at 3.[1]

## Argument

### I. Plaintiffs' Complaint should be dismissed under Rule 12(b)(1).

Defendants move to dismiss the Complaint for lack of subject-matter jurisdiction and for failure to state a claim under Rule 12(b)(1) and Rule 12(b)(6), respectively. Under Rule 12(b)(1), at the pleading stage, Plaintiffs must allege facts demonstrating that they satisfy the "irreducible constitutional minimum" of standing: (1) "an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical[,]" (2) the injury "must be fairly traceable to the challenged action of the defendant," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). For the purposes of Defendants' motion to dismiss, those allegations are accepted as true. *Id.*

### A. Plaintiffs lack standing to bring this pre-enforcement challenge under Rule 12(b)(1).

To establish pre-enforcement standing, Plaintiffs must demonstrate a risk that they will be subject to enforcement because of "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute." *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). This requires Plaintiffs to "assert more than a wholly speculative possibility" that the law will be enforced against them. *Schirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010); *see also Parents*

---

[1] Pursuant to the parties' agreement and the Court's order, this brief is a combined Memorandum of Law in support of Defendants' Motion to Dismiss and Response to Plaintiffs' Motion for a Preliminary Injunction. ECF 38.

*Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501, 505 (7th Cir.), *cert. denied*, 145 S. Ct. 14, 220 L. Ed. 2d 265 (2024) ("[T]he alleged future injury must also be concrete: conjecture about speculative or possible harm is inadequate."). Put another way, federal jurisdiction does not extend to cases in which the anticipated conflict between state law and the First Amendment is "purely hypothetical." *Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 631 (7th Cir. 2023).

Because Plaintiffs did not allege injuries to their employees or members, Plaintiffs must demonstrate an injury to the organizations themselves. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (distinguishing "associational standing" derived from standing of individual members from organizations' standing to sue based on "institutional interests"); *see also Legal Aid Chi. v. Hunter Props., Inc.*, No. 23-CV-4809, 2024 WL 4346615, at *6 (N.D. Ill. Sept. 30, 2024) (explaining that a plaintiff invoking "organizational standing" must "show an injury to the organization itself"). The Supreme Court recently held this standard requires organizations to allege more than ideological opposition to a law: "Like an individual, an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (quoting *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982)). Instead, organizational standing demands a showing that the law "directly affect[s] and interfere[s]" with Plaintiffs' "core business activities." *Id.* at 395.

**B. Plaintiffs did not plausibly allege a likelihood of violating the Act by engaging in proscribed conduct.**

**1. Plaintiffs' alleged employment violations are too speculative to establish any conflict with the Act.**

Plaintiffs' speculative injuries cannot furnish pre-enforcement standing because Plaintiffs did not adequately and concretely allege that their employment practices will conflict with the Act. Federal courts in New York recently rejected challenges to similar state and local anti-discrimination laws for lack of pre-enforcement standing. *See Evergreen Assoc., Inc. v. Hochul*, No. 1:20-cv-0112, 2025 WL 359074 (N.D.N.Y. Jan. 31, 2025) ("*Evergreen v. Hochul*"); *Evergreen Assoc., Inc. v. City of N.Y.*, No. 20-cv-0580, 2025 WL 416903 (E.D.N.Y. Feb. 6, 2025) ("*Evergreen v. N.Y.C.*"). They held that First Amendment claims brought by religiously-motivated organizations rested on speculation regarding the occurrence of a series of improbable events. *Evergreen v. Hochul* at *6 (describing chain of causation as "fatally attenuated"); *Evergreen v. N.Y.C.* at *12. Here, as in those cases, Plaintiffs alleged no facts suggesting that the risk of a conflict with the Act is more than "purely hypothetical." *Ind. Right to Life Victory Fund*, 66 F.4th at 631. Plaintiffs did not allege that they have ever taken adverse action against any employee or refused to hire an applicant based on a reproductive health decision. Plaintiffs therefore do not have standing. *See Evergreen v. Hochul* at *4; *Evergreen v. N.Y.C* at *11.

Instead, the Complaint presents an implausible chain of events to manufacture a conflict between Plaintiffs' employment practices and the Act. This "highly attenuated chain of possibilities" fails to establish that any "threatened injury [is] certainly impending." *Parents Protecting Our Child.*, 95 F.4th at 506 (quotations omitted). First, Plaintiffs failed to allege that it is plausible that individual employees or applicants would make reproductive health choices that contravene Plaintiffs' religious beliefs. Plaintiffs' hiring criteria for individuals who share their religious commitments render that possibility highly unlikely. PCC's Employee Handbook states

that "[a] personal relationship with Jesus Christ is a requirement for any employee, as well as believing that abortion is never a morally acceptable option." Compl. ¶ 49. Its Conduct Policy similarly mandates that staff "must be committed to glorifying God and witnessing His love in the person of His Son Jesus Christ." *Id.* ¶ 52. The Diocese's job postings list being a "[p]racticing Catholic in full communion with the teachings of the Church" as a requirement for employment. *Id.* Ex. 8, 9. Diocesan employees are required under the Diocese's Standards of Conduct to "represent the Catholic Church" and "conduct themselves in a way that does not contradict the doctrine and moral teaching of the Catholic Church." *Id.* Ex. 7. These hiring criteria, combined with Plaintiffs' obvious religious missions, demonstrate how Plaintiffs select for and hire individuals who are likely to agree with Plaintiffs' religious beliefs, including beliefs about reproductive health care. *See Evergreen v. N.Y.C.* at \*10 (holding that plaintiff's screening of employees who shared their views on abortion defeated pre-enforcement standing); *Evergreen v. Hochul* at \*5 (same).

Second, Plaintiffs are unlikely to learn about the reproductive health decisions of current or prospective employees in the first instance. Plaintiffs did not allege that they ask for this information during job interviews or otherwise require employees to disclose their protected health information throughout their employment. Nor did they allege any facts that would support an inference that their employees would volunteer information about their reproductive health choices that contradict the organizations' religious teachings. Such private health information is "typically private and confidential." *Evergreen v. N.Y.C.* at \*11 (citing 45 C.F.R. § 164.512(b)(1)(v)). Thus, it is not plausible that Plaintiffs are likely to discover that a current or prospective employee made a disfavored reproductive health choice. *See id.*; *Evergreen v. Hochul* at \*5 ("[T]he Court finds it

unlikely that these scenarios will occur in the future and that [Plaintiff] would ever have the knowledge necessary to violate the statute by taking action against employees.").

Third, even if an employee previously made or makes a reproductive health choice contrary to Plaintiffs' beliefs and Plaintiffs then learn about it, Plaintiffs acknowledge that such a choice would not, by itself, cause them to take adverse employment action. Instead, Plaintiffs alleged that their organizational mission is affected only if the person's choices are "unrepentant." Compl. ¶¶ 67–68, 84–86, 132. That is, Plaintiffs wish to discriminate only against individuals who have made certain reproductive health decisions *and* reject Plaintiffs' beliefs about the morality of those decisions by failing to repent. Plaintiffs failed to allege any facts plausibly suggesting that this situation is likely to arise; on the contrary, individuals affiliated with Plaintiffs' organizations are far more likely to share their views, particularly in light of Plaintiffs' employee screening methods. *See, e.g.*, *id.* Ex. 5 (listing, as a job qualification for PCC's Staff Nurse role, that applicant "[e]xhibits a strong pro-life commitment"). This further reduces the likelihood that Plaintiffs would take adverse action against an employee for having made particular reproductive health choices. *See Evergreen v. Hochul* at *4; *Evergreen v. N.Y.C.* at *11.

In sum, Plaintiffs' "assertions regarding the threat of future enforcement and potential prosecution amounts to speculation about a series of improbable events all occurring." *Evergreen v. N.Y.C.* at *12. Any conflict between the Amendments' prohibition on reproductive health discrimination and Plaintiffs' rights under the First or Fourteenth Amendments is wholly speculative and depends on an attenuated chain of possibilities that cannot support standing for a pre-enforcement challenge. Plaintiffs therefore lack standing under Rule 12(b)(1).

## 2. The Act's notice requirement is unchanged by the Amendments and Plaintiffs did not allege that they fail to comply with the Act.

The Complaint attempts to create an Article III injury in challenging the Act's requirement that employers post notices in employee handbooks and workplaces regarding the right to be free from discrimination. Compl. ¶¶ 165-71 (citing 775 ILCS § 5/2-102(K)(1)). But the Amendments did not change the Act's preexisting notice requirement, which has been in place since 2015. Plaintiffs now object to posting these notices because they "believe that such a notice would communicate a lie that their employees may make objectionable reproductive decisions free from adverse action." *Id.* at ¶ 170. This contention is insufficient to establish an injury because Plaintiffs did not plausibly allege that they are not in compliance with the notice requirement, or that any non-compliance would be fairly traceable to the Amendments.

The Act states—and has stated since 2015—that employers must post a generic notice in the workplace and in an employee handbook "summarizing the requirements of" the Act "and information pertaining to the filing of a charge, including the right to be free from unlawful discrimination, the right to be free from sexual harassment, and the right to certain reasonable accommodations." 775 ILCS § 5/2-102(K)(1). The Department's sample notice provided to Illinois employers, Compl. Ex. 12 at 7, which they may use to comply with the Act, has not changed since the Amendments to the Act went into effect. Notably, the sample notice does not specifically reference protections for reproductive health decisions or exhaustively list all protected characteristics named in the Act, merely stating: "employers may not treat people differently based on race, age, gender, pregnancy, disability, sexual orientation or any other protected class named in the Act."[2] Nor does the Act require Plaintiffs to use the specific sample notice language prepared

---

[2] The Department, *You Have the Right to be Free From Job Discrimination and Sexual Harassment* (Sept. 2022), https://dhr.illinois.gov/content/dam/soi/en/web/dhr/documents/sh-and-discrimination-employee-poster-v10.2022.pdf.

by the Department so long as their notice meets the bare minimum requirements set forth for a generic notice under the Act. 775 ILCS § 5/2-102(K)(1). Thus, the Act does not force Plaintiffs to "broadcast or include the Act's requirements about reproductive decisions in their employee handbooks or on workplace posters" as they inaccurately claim. Compl. ¶ 169.

Because Plaintiffs did not allege that the Amendments changed anything about the notice requirement, the Complaint lacks plausible allegations that Defendants will take enforcement action against them. *Parents Protecting Our Child.*, 95 F.4th at 506. Both Plaintiffs have employee handbooks, Compl. ¶ 167, and PCC alleges that its employee handbook already contains a discrimination disclaimer that likely satisfies the notice requirement. *Id.* Ex. 3 at 7 ("Subject to…all applicable state and federal laws, The PCC does not discriminate in its employment practices or in the administration and dissemination of its programs and services."). Similarly, "[b]oth Plaintiffs have workplaces where notices are customarily posted," like that already required by the Act before the Amendments went into effect. *Id.* ¶ 168. Assuming that Plaintiffs were in compliance with the notice posting requirement prior to the Amendments, Plaintiffs can simply continue to operate with the same notices that were already required by the Act. If Plaintiffs were not in compliance with the notice posting requirement prior to the Amendments, their alleged injury posed by an enforcement action is neither fairly traceable to the Amendments' enactment nor redressable by the relief they seek. Plaintiffs thus fail to allege that they intend to engage in proscribed conduct under the Act's notice requirement, and so cannot show injury in fact. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

### 3. Plaintiffs did not plausibly allege that compliance with the Amendments undermines their organizational missions and establishes an injury in fact.

Plaintiffs also lack standing because the individual health care decisions of current or prospective employees do not concretely injure Plaintiffs' religious or expressive missions.

Organizations suing to vindicate their own injuries must show "far more than simply a setback to the organization's abstract social interests." *All. for Hippocratic Med.*, 602 U.S. at 394 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Rather, Article III standing requires a concrete injury to the "core business activities" of Plaintiffs' organizations. *Id.* at 395. Plaintiffs failed to allege a plausible nexus between the hypothetical private reproductive health decisions of employees and any concrete injury to the organizations.

Plaintiffs suggest that being prevented from firing or taking other adverse action against employees because of their reproductive health decisions would interfere with Plaintiffs' expressive objectives, but they offer no factual specifics supporting that conclusion. Instead, Plaintiffs express generic concerns that it "would fatally undermine [Plaintiffs'] pro-life mission and message" if an employee had an abortion. Compl. ¶ 66; *see also id.* ¶ 86. But "expressions of worry and concern do not suffice to show that any [plaintiff] has experienced actual injury or faces any imminent harm attributable to the" challenged law. *Parents Protecting Our Children*, 95 F.4th at 506. The Complaint never explains how complying with an anti-discrimination law about employees' private reproductive health choices (which, even if Plaintiffs learned about, they would not be required to publicize or disclose) would prevent any organization from spreading a pro-life message. Plaintiffs thus failed to allege facts that could make this complex theory of injury plausible. *See Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) ("[T]he required level of factual specificity rises with the complexity of the claim." (citations omitted)).

Plaintiffs also make a conclusory suggestion that those hypothetical choices would render Plaintiffs' advocacy less credible. Compl. ¶¶ 67, 85, 198. But Plaintiffs' concern that certain viewpoints will be wrongly imputed to them is not a First Amendment injury. In *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, the Supreme Court considered a First Amendment

challenge by law schools that sought to exclude military recruiters from campus because "they could be viewed as sending the message that [the schools] see nothing wrong with the military's policies, when they do." 547 U.S. 47, 64-65 (2006). The Court rejected this claim, noting that even "high school students can appreciate the difference between speech a school sponsors and speech the school permits because legally required to do so, pursuant to an equal access policy." *Id.* at 65. Thus, Plaintiffs' desire to discriminate or harass based on this purported concern is not "affected with a constitutional interest," *Brown*, 86 F.4th at 761, and cannot support standing.

### C. Plaintiffs' claims are prudentially unripe.

Independent of the constitutional standing requirements discussed above, the Court should also decline to adjudicate Plaintiffs' pre-enforcement challenge under the doctrine of prudential ripeness. The prudential ripeness requirement "prevents the premature adjudication of claims premised on uncertain or contingent events." *Finch v. Treto*, 606 F. Supp. 3d 811, 842 (N.D. Ill. 2022) (quotations omitted), *aff'd*, 82 F.4th 572, 579 (7th Cir. 2023). The ripeness inquiry focuses on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Finch*, 82 F.4th at 579 (quoting *Metro. Milwaukee Ass'n of Commerce v. Milwaukee County*, 235 F.3d 879, 882 (7th Cir. 2003)).

Plaintiffs' claims are not fit for judicial decision because they ask the Court to guess whether and how Plaintiffs might violate the Amendments. For the reasons explained above, Plaintiffs' claims rest on an uncertain chain of possibilities about employees' hypothetical reproductive health decisions. *See* Section I.A.1.a. Moreover, certain statutory or constitutional exemptions might allow Plaintiffs a complete defense in actions to enforce the Act. *See generally* Compl. ¶¶ 232–55 (citing various constitutional exemptions Plaintiffs contend apply to their alleged violations of the Act), ¶ 226 (noting that Plaintiffs' hiring preferences might implicate exception in 775 ILCS 5/2-104(A)(1) for "bona fide occupational qualifications"); 775 ILCS 5/2-

101(B)(2) (excluding certain religious organizations from the Act's definition of "employer"). In the factual vacuum of a pre-enforcement challenge, this Court cannot predict how the Act might apply to Plaintiffs and their employees' hypothetical health decisions. These uncertainties render Plaintiffs' claims unripe. *See Hinrichs v. Whitburn*, 975 F.2d 1329, 1334 (7th Cir. 1992) (affirming dismissal of a case as unripe where claims would have required the Court "to issue an advisory opinion" anticipating possible interpretations and enforcement of state law); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) (finding case unfit for judicial resolution because factual development would "significantly advance our ability to deal with the legal issues presented").

For similar reasons, dismissal for lack of ripeness would not cause hardship. Enforcement of the Act against Plaintiffs is at most a speculative possibility, and refraining from unlawful discrimination would not preclude Plaintiffs from fulfilling their organizational missions. Plaintiffs' challenge to the "Accommodation Clause" illustrates this point: they contend that the requirement to accommodate employees' pregnancy-related needs "severely burden[s]" their expressive freedoms. Compl. ¶ 200. Yet this specific requirement has been in place for over a decade. *See* Ill. Pub. Act. 98-1050 (adding 775 ILCS 5/2-102(J) eff. Jan. 1, 2015). Plaintiffs will continue operating as they have over the past ten years and may raise their claims in the unlikely event that an actual conflict arises with an actual employee. *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 811–12 (holding that mere uncertainty as to validity of legal rule does not constitute hardship).

**D. If the Complaint is not dismissed, preliminary discovery into Plaintiffs' standing is necessary to determine jurisdiction.**

For the reasons discussed above, Plaintiffs' Complaint should be dismissed on standing and ripeness grounds. In the alternative, however, Defendants request the opportunity to conduct jurisdictional discovery before the case proceeds further. Discovery into Plaintiffs' employment

and hiring practices, age, gender, and other information about Plaintiffs' current employees, the likelihood of an actual conflict with the Amendments that could result in enforcement, and the extent of any possible injury to Plaintiffs' organizational missions will be necessary to determine whether Plaintiffs can carry their burden to demonstrate standing. *See Evergreen v. Hochul* at *4 (granting summary judgment to defendant after discovery confirmed that plaintiff lacked standing); *Evergreen v. N.Y.C.* at *5 (same). At minimum, there are significant questions about whether Plaintiffs have standing to bring this pre-enforcement challenge. And "once the district judge has reason to believe that there is a serious jurisdictional issue, [the judge] is obliged to resolve it before proceeding to the merits[.]" *Crawford v. United States*, 796 F.2d 924 (7th Cir. 1986). To resolve the jurisdictional issue, a district court "may allow discovery to be completed on the issue and order a further hearing to be held before ruling on the Rule 12(b)(1) motion." 5B Fed. Prac. & Proc. Civ. § 1350; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). That is the proper course here if the Complaint is not dismissed.

## II. The Complaint failed to state a claim under Rule 12(b)(6).

Under Rule 12(b)(6), Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 570 (2007)). This requires "more than a sheer possibility" that Plaintiffs are entitled to relief, *id.*, and the allegations cannot be "merely conceivable or speculative." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (citations omitted).

### A. The Complaint failed to state an expressive association claim.

Plaintiffs alleged in Count I that the Amendments violate their right to freedom of expressive association by prohibiting them from hiring and firing employees based on their reproductive health decisions. Compl. ¶¶ 197–199.[3] This claim fails as a matter of law for two reasons. First, the right to freedom of association does not extend to employment decisions. *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984). Second, the conduct on which Plaintiffs seek to discriminate is not itself expressive and therefore does not impact their expressive capabilities. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648–59 (2000).

### 1. There is no right to expressive association in employment decisions.

The right to freedom of expressive association does not include a right to engage in employment discrimination. The cases in which the Supreme Court defined the right to freedom of expressive association involved private membership associations, not traditional employment relationships. *See Dale*, 530 U.S. at 649-50; *Roberts v. U.S. Jaycees*, 468 U.S. 609, 612-13 (1984); *N.Y. State Club Ass'n, Inc., v. City of N.Y.*, 487 U.S. 1, 8-9 (1988); *Bd. of Dirs. Of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 539-40 (1987). In fact, the Court summarily rejected a freedom of expressive association claim in employment decisions, finding that "invidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Hishon*, 467 U.S. at 78 (citing *Norwood v. Harrison*, 413 U.S. 455, 470 (1973)); *see also Starkey*

---

[3] Plaintiffs also invoked an array of other activities and First Amendment principles as part of Count I. *See, e.g.,* Compl. ¶ 199 (including "compelling them to alter their employee handbooks"), ¶ 200 (alleging the Act forces them to "cooperate in and associate with activities through their provision of accommodations and benefits"), ¶ 201 (alleging the Act "regulate[s] expressive association based on content, viewpoint, and speaker identity"). However, these allegations and principles—individually or in the aggregate—do not support a claim under the right to freedom of expressive association, which is limited to the right "to associate with others." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000).

*v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 496 F. Supp. 3d 1195, 1209 (S.D. Ind. 2020) (rejecting employer's expressive association defense to employee's Title VII claim); *Billard v. Charlotte Cath. High Sch.*, 2021 WL 5037531, at *22-23 (W.D.N.C. Sept. 3, 2021) (overruled on other grounds).[4]

This distinction arises from the fundamental difference between employees and members of a voluntary membership organization. Employees are hired and paid to perform a specific function and job duties defined by the employer in furtherance of its mission. If an employee fails to adequately perform that function and threatens the employer's mission, the employer can lawfully terminate or take other adverse action against them. By contrast, voluntary membership organizations are typically defined by their membership and the opinions and positions their members hold. For such an organization, the right "not to associate" with individuals with different opinions or positions may be imperative to maintaining its identity and purpose. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (7th Cir. 2006). This type of existential threat is not present for employers, who have the discretion to shape their function and mission independent of

---

[4] In a challenge to a New York law similar to the Amendments, the Second Circuit recently deviated from this rule and created a narrow path for applying expressive association analysis to employment decisions. *CompassCare v. Hochul*, 125 F.4th 49 (2d Cir. 2025). It noted the critical differences between membership organizations and employer-employee relationships, and established a heightened standard for employer expressive association claims wherein an employer must prove that the statute: (1) "burdens its distinct associational rights by forcing it to employ individuals who act or have acted against its very mission"; and (2) "burdens its associational rights with respect to specific employment decisions." *Id.* at 61 (citing *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023)) (cleaned up). However, no court in this Circuit has adopted this new carveout to established Supreme Court precedent, nor should it be applied here. *See McMahon v. World Vision Inc.*, 704 F. Supp. 3d 1121, 1144-45 (W.D. Wash. 2023), *appeal pending*, No. 24-3259 (9th Cir. May 22, 2024). But even if this Court chose to apply this test, Plaintiffs' expressive association claim would fail because they seek a blanket prohibition on application of the Amendments, rather than limiting their claims to specific employment decisions. *See* Compl. ¶¶ 57-66, 92-103, 202. Additionally, for the reasons explained in Section II.B., below, the Complaint lacks allegations showing how employing a person who has made a particular reproductive health decision would interfere with Plaintiffs' ability to express their religious views.

the opinions of individual employees. Additionally, unlike the relationships between individuals in voluntary membership associations, there is an extensive history of government regulation of the relationship between employers and employees, including in the context of antidiscrimination statutes. *See, e.g.*, 42 U.S.C. § 2000e-2; 820 ILCS 105. The Supreme Court has long recognized that "[i]n dealing with the relation of employer and employed, the Legislature necessarily has a wide field of discretion[.]" *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937).

Finally, acceptance of Plaintiffs' broad theory of expressive association would undermine anti-discrimination protections for countless workers. "[I]f freedom of association applied to any entity with an expressive mission, then businesses engaged in some small amount of expressive association would be granted an exception from all statutes governing the relationship between a business and the people they interact with. This preposterous result cannot be the case." *Billard*, 2021 WL 5037531, at *22.

## 2. Employees' healthcare decisions do not plausibly prevent Plaintiffs from advocating their viewpoints.

Count I fails under Rule 12(b)(6) for the additional reason that Plaintiffs did not plausibly allege that being forced to employ an individual who has made a reproductive health choice with which they disagree would "affect[] in a significant way [their] ability to advocate public or private viewpoints." *Dale*, 530 U.S. at 648 (citing *N.Y. State Club Ass'n*, 487 U.S. at 13). State action violates a group's right to freedom of expressive association only if (1) the group is an expressive association, (2) the state action at issue significantly affects the group's ability to advocate its viewpoints, and (3) the State's interest in its action does not justify the burden imposed on the associational expression. *Dale*, 530 U.S. at 648-59. The Complaint contains no allegations from which the Court could infer that Plaintiffs' employees' private reproductive health decisions—of

which Plaintiffs themselves may never learn and are generally confidential by law—would have a significant impact on their advocacy efforts or identity as an organization.

The Complaint fails to satisfy the test for this requirement set forth by the Supreme Court in *Dale*. In that case, a gay Boy Scout leader filed suit against the Boy Scouts of America for revoking his position on the basis of his sexual orientation in violation of a New Jersey law prohibiting discrimination in public accommodations. The Boy Scouts argued that Dale's position as a leader in their organization burdened its right to express its disapproval of homosexuality. The Court held that the Boy Scouts' right to freedom of expressive association permitted them to exclude Dale—not because of his sexual orientation, but because of his activities as a "gay rights activist." *Id.* at 652–53, 655–56. The Court specifically rejected the notion that a group may exclude an individual based on status alone, explaining: "That is not to say that an expressive association can erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message." *Id.* at 653. Thus, *Dale* and other cases established that forced inclusion of members who express viewpoints different from those of the organization violates an organization's right to freedom of expressive association if that inclusion poses an existential threat, either to the organization itself or to its message. *See Christian Legal Soc'y*, 453 F.3d at 863; *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1000 (7th Cir. 2019) (finding that requiring a religious group to allow individual with "beliefs antithetical to its own" to speak during services would "significantly affect its ability to preserve and pass on its message").

By contrast, the Complaint did not allege that either the State or individual actors are attempting to change Plaintiffs' message. The Amendments do not require Plaintiffs to hire or include individuals in their organizations who seek to express contrary viewpoints or alter their

message. The statute does not even prohibit Plaintiffs from selecting or retaining employees based on their agreement with Plaintiffs' missions or ability to sincerely convey Plaintiffs' message. Instead, the Act simply prohibits discrimination based on an employee's reproductive health decisions. These personal, protected health choices are neither expression nor advocacy and are not determinative of an individual's ability or wish to advocate against those choices on behalf of the organization. Indeed, Plaintiffs recognize that having obtained abortion care at some point does not prohibit someone from effectively advocating against others making the same choice. Compl. ¶ 132 ("Some of the most powerful pro-life advocates are those who repent from past reproductive decisions.").

Plaintiffs further claim that employing individuals who have made certain reproductive health decisions would "undermine[]" their "message that [they are] sincerely committed to [their] mission." Compl. ¶¶ 68, 86. This conclusory allegation fails to state a plausible claim for relief. Even if one of Plaintiffs' employees obtained abortion care, for example, Plaintiffs have not made clear how the public—let alone the organization itself—would ever learn about it. This case is unlike *Dale*, where the member at issue was a public advocate and activist for a cause that the Boy Scouts disapproved of, or *Neely-Bey Tarik-El*, where an individual sought to express views contrary to those of the religious group. Here, inclusion of individuals who have made particular private reproductive health decisions—on its own—would have no impact on the expressive function of or public perception of Plaintiffs. In short, Plaintiffs did not plausibly allege that individual employees obtaining reproductive health care with which Plaintiffs disagree would affect their organizational message.

### 3. The State has a compelling interest in preventing invidious discrimination that outweighs any incidental effect on Plaintiffs' associational rights.

Even if Plaintiffs could demonstrate that the Amendments implicate their right to expressive association, which they cannot, they fail to state a First Amendment claim because the Act and the Amendments reflect the State's compelling interest in rooting out discrimination. *See Jaycees*, 468 U.S. at 623 (noting that state's "compelling interest in eradicating discrimination against its female citizens justifies the impact that the application of the statute . . . may have on the male members' associational freedoms."). For the reasons explained above, the statute does not burden Plaintiffs' ability to express their viewpoints or fulfill the mission of the organization. And any alleged burden on Plaintiffs' First Amendment rights is outweighed by the State's compelling interest in promulgating and enforcing rules against employment discrimination.

### B. The Complaint failed to state a Free Speech claim.

In Count IV, Plaintiffs allege that the Amendments violate their rights to free speech. Compl. ¶¶ 256–72. Count IV challenges the parts of the Amendments that make it unlawful "to hire, to segregate . . . or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination," 775 ILCS 5/2-102(A); and to deny reasonable accommodations for pregnancy-related medical needs, *id.* at 5/2-102(J). Plaintiffs refer to these provisions as the "Employment Clause," the "Benefit Clause," and the "Accommodation Clause." Compl. ¶¶ 10, 12-13. Plaintiffs further contend that the Act's prohibitions on harassment and the requirement that they give employees notice of their rights, which they term the "Offensive Speech Clause" and the "Notice Clause," violate their rights to

free speech. Compl. ¶¶ 141, 260. None of these allegations state a Free Speech claim upon which relief can be granted.[5]

### 1. Hiring employees, providing benefits, and making reasonable accommodations are professional conduct, not protected speech.

Plaintiffs fail to state a claim that the Employment, Benefit, or Accommodation Clauses violate their free speech rights because these provisions target non-expressive conduct that is not protected by the First Amendment. The First Amendment does not protect conduct unless it is "inherently expressive." *Tagami v. City of Chi.*, 875 F.3d 375, 378 (7th Cir. 2017) (quoting *Rumsfeld*, 547 U.S. at 66). And conduct is not inherently expressive unless it "comprehensively communicate[s] its own message without additional speech." *The Bail Project, Inc. v. Ind. Dep't of Ins.*, 76 F.4th 569, 575 (7th Cir. 2023) (quoting *Tagami*, 875 F.3d at 378). Limiting First Amendment protections to expressive conduct ensures that conduct is not protected merely because it is undertaken with some expressive purpose; "[o]therwise, 'an apparently limitless variety of conduct [could] be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). Regulations of the non-expressive conduct of employers are not subject to First Amendment scrutiny even when those regulations also affect speech. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

Hiring decisions, providing benefits, and affording accommodations to employees are not inherently expressive and thus not protected by the First Amendment. *Slattery v. Hochul*, 61 F.4th 278, 292 (2d. Cir. 2023) ("[W]e are not persuaded that the state's attempt to regulate [] personnel decisions is itself a regulation of speech."). Like the plaintiffs in *CompassCare*, Plaintiffs "do not

---

[5] Even if the Amendments did have some impact on Plaintiffs' First Amendment rights, they would survive strict scrutiny analysis because they reflect the State's compelling interest in preventing invidious discrimination in employment, as discussed in Section II.A.3. *supra*.

allege that their action in hiring or firing employees is itself expressive. They also do not allege that terminating an employee who made a particular reproductive health decision is intended to convey a particularized message, or that listeners will understand it as such." *CompassCare v. Hochul*, 125 F.4th 49, 68 (2d Cir. 2025). No reasonable person could "detect any message" from these decisions unless they were accompanied by other speech about Plaintiffs' "mission— presumably gleaned from the organization's website or other speech explaining its efforts[.]" *Bail Project*, 76 F.4th at 577. In an attempt to conjure some nexus to protected speech, Plaintiffs allege that they wish to insert language in job postings announcing their refusal to hire anyone who has recently had an abortion or who does not adhere to Plaintiffs' religious teachings about reproductive health care. Compl. ¶¶ 134, 139–40. However, statutes that generally prohibit employment discrimination do not become unlawful regulations of speech simply because they prevent employers from advertising their animus. *See Rumsfeld*, 547 U.S. at 62 (noting that Congress "can prohibit employers from discriminating on the basis of race," and "[t]he fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct").

## 2. Plaintiffs did not plausibly allege that the Act's prohibition on harassment violates the Free Speech Clause.

Count IV's attack on the so-called "Offensive Speech Clause" also fails as a matter of law because laws prohibiting discriminatory harassment of employees do not impermissibly restrict speech. Courts have consistently held that anti-discrimination statutes like Title VII, that prohibit harassment and discrimination in the workplace, are content-neutral. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) (citing Title VII as example of permissible content-neutral regulation of conduct). In cases of unlawful harassment, it is not "the content of the speech, as much as the deliberate verbal (or visual) assault" that is prohibited. *Erznoznik v. City of Jacksonville*, 422 U.S.

205, 211 n.6 (1975). Indeed, the First Amendment does not protect harmful or offensive speech in locations like the workplace where unwilling listeners cannot simply avoid the speaker's message. *Cf. id.* (distinguishing circumstances in which speaker attempts to "reach" and "shock[] unwilling viewers"); *Hill v. Colorado*, 530 U.S. 703, 716 (2000) ("[T]he protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the unwilling audience cannot avoid it."). A law prohibiting harassment based on reproductive health choices is no different than longstanding federal prohibitions on racial or sexual harassment, which are lawful regulations of the employer-employee relationship and do not violate employers' freedom of speech.

Moreover, the Complaint did not plausibly allege that the Act's prohibitions on harassment violate Plaintiffs' free speech rights. Under the Act, liability for harassment requires more than simply expressing a message with which a particular employee disagrees. Critically, claims of harassment require showing conduct that is "so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment." *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019). This requirement is both objective and subjective, meaning that the employee must actually "find the workplace hostile or abusive." *Id.* at 561. But the Complaint alleges no intention by Plaintiffs to abuse employees based on particular reproductive health decisions; instead, it states that they merely wish to spread their pro-life message as they do in the ordinary course of their operations. *See* Compl. ¶¶ 143, 148. Plaintiffs' failure to allege that their speech would "alter" the conditions of employment either objectively or subjectively—i.e., from the perspective of employees who sought employment in a staunchly pro-life workplace—is fatal to Count IV's challenge to the Act's anti-harassment provision.

### 3. The notice requirement governs commercial speech and withstands rational basis review.

Plaintiffs further allege in Count IV that the Act's requirement to notify employees of their rights in handbooks and in a poster constitutes compelled speech. Compl. ¶ 261. The 2024 Amendments themselves, which gave rise to Plaintiffs' Complaint, do not compel speech: Plaintiffs have been required to adhere to the notice requirement since 2015. But the State is permitted to compel factual, uncontroversial, commercial speech, so long as the underlying law passes rational basis scrutiny. *Zauderer v. Off. of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). Those requirements are satisfied here.

The Act requires posting a notice that contains "'purely factual and uncontroversial information about' the terms of employment under [Illinois] law," which is a commercial context. *CompassCare*, 125 F.4th at 67 (quoting *Zauderer*, 471 U.S. at 651). The notice language promulgated by the Department, Compl. Ex. 12 at 7—which is also "suitable for inclusion in an employee handbook"[6]—states that "employers may not treat people differently based on race, age, gender, pregnancy, disability, sexual orientation or any other protected class named in the Act."[7] As noted *supra*, this notice does not explicitly mention reproductive health decisions. Posting of this sample language and its inclusion in Plaintiffs' handbooks would fulfill both requirements of 775 ILCS 5/2-102(K). As it merely conveys factual information about employees' rights under Illinois law, this language is entirely factual and uncontroversial. Indeed, "an employer's right to silence is sharply constrained in the labor context, and leaves it subject to a variety of burdens to post notices of rights and risks." *UAW-Labor Emp. & Training Corp. v. Chao*, 325 F.3d 360, 365

---

[6] The Department, *Employer Notice* (Sept. 2022), https://dhr.illinois.gov/content/dam/soi/en/web/dhr/documents/idhr-employer-notice-poster-v9.22.pdf.
[7] *Supra* note 2.

(D.C. Cir. 2003); *see also Lake Butler Apparel Co. v. Sec'y of Labor*, 519 F.2d 84, 89 (5th Cir. 1975); *Nat'l Ass'n of Mfrs. v. Perez*, 103 F. Supp. 3d 7, 17 (D.D.C. 2015). The notice requirement thus qualifies as commercial speech.

Because the notice requirement is commercial speech, it is subject only to rational basis review. *See Zauderer*, 471 U.S. at 651. Under the rational basis standard, "a law avoids constitutional scrutiny as long as it bears a rational relationship to a legitimate government interest." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013). Courts "do not require the state to actually articulate the law's purpose or produce evidence to sustain the rationality" of the law, but rather, "the law is presumed constitutional." *Id.* (quotations omitted). The law will be upheld "if there is any reasonably conceivable state of facts supporting" it. *Id.* (quotation omitted). Here, the Act's purpose is "to secure for all individuals within Illinois the freedom from discrimination based on" protected categories. 775 ILCS 5/1-102 (A). This justification easily clears the low bar of rational basis review. *See CompassCare*, 125 F.4th at 67.

### 4. The Act is not viewpoint discriminatory.

Finally, the Act does not discriminate against Plaintiffs' viewpoints. The statutory definition of "reproductive health decisions" broadly encompasses treatments as varied as abortion, fertility care, miscarriage management, male birth control, and postnatal care. 775 ILCS 5/1-103(O-2). It does not single out any health care to which Plaintiffs are religiously opposed. Nor does the statute target discrimination with a religious motive in favor of secular conduct. *See id.* The prohibition on reproductive health discrimination complements existing prohibitions on pregnancy discrimination with the effect of ensuring that the full range of reproductive health choices receive protection without favoring certain decisions over others. This comprehensive, neutral prohibition protects employees equally against employment discrimination based on their decisions to become pregnant or carry to term as it does based on their decisions to use

contraception or terminate a pregnancy. The Act's anti-discrimination scheme, considered as a whole, therefore does not engage in viewpoint discrimination. *See Choose Life Ill., Inc. v. White*, 547 F.3d 853, 865 (7th Cir. 2008) (finding state prohibition on any abortion-related specialty license plate was viewpoint neutral because it did not favor one viewpoint on abortion over another).

### C. The Complaint failed to state a Free Exercise claim.

Plaintiffs' Free Exercise claim fails as a matter of law because the Act and the Amendments are neutral and generally applicable. *Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 878-79 (1990). Despite Plaintiffs' claims to the contrary, the Free Exercise Clause "does not require the accommodation of religious practice." *Soc'y of Divine Word v. U.S. Citizenship & Immigr. Servs.*, 129 F.4th 437, 451 (7th Cir. 2025) (quoting *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006)). Neutral and generally applicable laws are constitutional if they have a rational basis. *Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017). As set forth above, the Amendments satisfy rational basis review. *Supra*, Section II.B.3.

On their face, the Amendments are a neutral and generally applicable regulation of the employment relationship because they broadly prohibit discrimination in employment without targeting employers for regulation based on religious belief. *See CompassCare*, 125 F.4th at 68 (holding that New York's analogous statute is "facially neutral, applying to religious and non-religious employers alike"); *see also United States v. Indianapolis Baptist Temple*, 224 F.3d 627, 629 (7th Cir. 2000) (holding that federal employment tax laws are neutral and generally applicable because they "are not restricted to . . . religion-related employers generally, and there is no indication that they were enacted for the purpose of burdening religious practices").

Plaintiffs contend that the Act is not neutral or generally applicable because it involves individualized assessments about whether conduct is covered by the statute. Compl. ¶¶ 212–26.

But a law does not cease to be neutral or generally applicable simply because applying it requires examining the facts of each case. Rather, a law is subject to heightened scrutiny only if it establishes a "formal mechanism for individualized exemptions." *See Fulton v. City of Phila., Pa.*, 593 U.S. 522, 537 (2021) (striking down contract provision because it gave "sole discretion" to agency to grant exemptions). No such formal mechanism exists under the Act. The exemptions that Plaintiffs cite are features of the statute to be interpreted and applied, not ad-hoc decisions committed to the regulator's judgment. Indeed, contrary to Plaintiffs' conclusory allegation, Defendants have no discretion—"unbridled" or otherwise, Compl. ¶ 225—to dictate whether Plaintiffs have violated the Act. The Department is an investigatory agency that accepts or initiates charges alleging a violation and then the Illinois Human Rights Commission, a separate entity, adjudicates those charges. The Attorney General similarly has authority only to investigate and initiate proceedings related to a pattern or practice of discrimination. The fact that a judge may be called upon to decide whether certain conduct violated a statute by examining the facts of the case does not deprive the statute of facial neutrality. *See Ill. Bible Colls.*, 870 F.3d at 639-41 (regulatory scheme that requires Board of Higher Education "to consider individual factors" based on "secular criteria" in granting institutions authority to issue degrees does not undermine neutrality or general applicability).

The Complaint further alleges that Defendants "show[ed] hostility toward religion" in failing to exempt Plaintiffs in particular. Compl. ¶¶ 228–29. This argument does nothing to shore up Plaintiffs' Free Exercise claim. There is no First Amendment right to an exemption from a neutral and generally applicable regulation. *Smith*, 494 U.S. at 878–79. And the fact that the statute contains certain *other* exemptions does not render it constitutionally suspect. *See United States v. Lee*, 455 U.S. 252, 261 (1982) (rejecting claim that religious exemption from social security taxes

was unconstitutional because it was limited to certain categories). What Plaintiffs seek as a so-called exemption is really preferential treatment under a neutral law—something the Free Exercise Clause does not require. *See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010).

To the extent that the Act treats religious employers differently at all, it *favors* them by excluding religious employers from regulation under certain circumstances. *See* 775 ILCS 5/2-101(B)(2). This religious exemption does not undermine the Act's neutrality or general applicability because religious exemptions do not "prohibit the practice of religion. Instead, they do the exact opposite and encourage religious practice by providing exceptions" to otherwise generally applicable statutes for religious organizations. *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 744 (7th Cir. 2015) (cleaned up). By exempting religious employers from some applications of the Act, the Act's religious exemption acts as "[a] benefit to religion [that] does not disfavor religion in violation of the Free Exercise Clause." *Id.*

Finally, Plaintiffs allege that the Amendments were motivated by discriminatory animus. Compl. ¶¶ 227–29. No allegations in the Complaint plausibly support that claim. The legislative history that Plaintiffs append reveals that the purpose of the law was to prevent discrimination based on reproductive health decisions, not to target religion. *See* Compl. Ex. 11 at 72–74; *see also CompassCare*, 125 F.4th at 68; *Slattery*, 61 F.4th at 293. Even if the Court were to credit the conclusory allegation of legislative animus, Plaintiffs' claim amounts to no more than "guesswork" about the reasons the statute was passed. Such speculation, without supporting factual allegations, cannot state a First Amendment claim. *See United States v. O'Brien*, 391 U.S. 367, 383–84 (1968). And the fact that Plaintiffs are not receiving preferential treatment by way of a statutory exemption does not plausibly support an inference of discriminatory intent. *Cf. Martinez*, 561 U.S. at 697 n.27

(rejecting argument that Free Exercise clause entitles religious organizations to exemptions from neutral statutes).

**D. Count V failed to state an Equal Protection claim**

Count V alleges that the Amendments violate the Equal Protection Clause by granting exemptions to others, but not to Plaintiffs. This claim is thinly supported and ultimately untenable, because the Amendments are facially neutral with respect to religion and the Complaint did not plausibly allege that discriminatory intent animated the decision not to exempt religious employers from the Act's provisions.

"[T]he Fourteenth Amendment guarantees equal laws, not equal results." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979). When a facially neutral statute is challenged on the ground that it produces discriminatory effects on a protected classification, "a twofold inquiry is [] appropriate." *Id.* at 274. "The first question is whether the statutory classification is indeed neutral in the sense that it is not" based on a suspect classification. *Id.* And, if the statute is neutral, "the second question is whether the adverse effect reflects invidious" discrimination against the suspect class. *Id.* Ultimately, "purposeful discrimination is 'the condition that offends the Constitution.'" *Id.* (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971)). The answers to these questions are easy: the Amendments are clearly not based on classification of employers as religious versus secular, nor is there any evidence whatsoever in the legislative record that purposeful discrimination against religious employers underlies the Amendments. *See Carrero v. City of Chi.*, No. 23-cv-650, 2024 WL 22099 (N.D. Ill. Jan. 2, 2024) (rejecting Equal Protection claim where plaintiff failed to plausibly allege that defendant "discriminated against a definable class of people" in rejecting plaintiff's application for religious exemption). The Court

must therefore apply only rational basis review to the Amendments. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1001 (7th Cir. 2006).[8]

Even if the Amendments were *not* neutral with respect to religion, rational basis review would still apply. Where a plaintiff brings both a Free Exercise claim and an Equal Protection claim for religious discrimination, and the Free Exercise claim fails, courts "apply rational-basis scrutiny to [their] equal protection claims." *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004). Because Plaintiffs' Free Exercise claim has no merit per Section II.C. *supra*, rational basis review would apply here even if Plaintiffs adequately alleged disparate treatment and invidious intent.

Under the rational basis standard, "a law avoids constitutional scrutiny as long as it bears a rational relationship to a legitimate government interest." *Wis. Educ. Ass'n Council*, 705 F.3d at 653. As set forth above in Section II.B.3., the Amendments satisfy rational basis review. So too does the State's decision not to exempt Plaintiffs from the Amendments' requirements, which is the relevant question where a plaintiff raises an Equal Protection claim based on denial of exemption. *Nordlinger v. Hahn*, 505 U.S. 1, 16-17 (1992). Though it is Plaintiffs' burden to show that there is no plausible rational basis for the State's decision not to exempt Plaintiffs from the Amendments, the State has already provided two bases: the State's desire to treat protections for reproductive health decisions, sexual orientation, and gender identity uniformly; and that

---

[8] To the extent Plaintiffs attempt to make a "class-of-one" Equal Protection claim, that effort also fails. "A plaintiff alleging a class-of-one equal-protection claim must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). And "[t]o be similarly situated . . . , the persons alleged to have been treated more favorably must be *identical or directly comparable* to the plaintiff in all material respects." *Id.* (emphasis added). Plaintiffs did not show that an employer similarly situated to a religious organization such as the Diocese, or a health care organization such as PCC, are subject to the exemptions outlined in the Act. And the differences between the statutory exemptions and Plaintiffs are obvious. For example, Plaintiffs are not identical or directly comparable to a person renting out a room in a house that they also live in, 775 ILCS 5/3-106, or to a financial institution underwriting loans, *id.* at 5/4-104.

employees of religious organizations are just as entitled as other employees to be protected from wrongful discrimination. 775 ILCS 5/1/-102(A); Compl. Ex. 15 at 2. This Court should dismiss Plaintiffs' Equal Protection claim.

## E. Count III failed to state a claim on which relief can be granted.

In Count III, Plaintiffs invoke two related First Amendment principles: the religious-autonomy doctrine and the ministerial exception.[9] Compl. ¶¶ 232-55. The former requires that "churches . . . have independence in matters of faith and doctrine and in closely linked matters of internal government." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 975 (7th Cir. 2021) (cleaned up). In the employment-law context, this principle gives rise to the ministerial exception, which requires courts "to stay out of employment disputes" involving so-called "ministerial" employees, who "hold[] certain important positions with churches and other religious institutions." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). Neither of these principles entitles Plaintiffs to the categorical immunity they claim from anti-discrimination law.

Plaintiffs' claim that the limited ministerial exception entitles them to a blanket exemption from the Amendments' requirements fails for at least two reasons. First, assessing whether a given employee qualifies as "ministerial" requires a fact-intensive inquiry that "take[s] all relevant circumstances into account," *id.* at 758, such that "enjoining enforcement of [a state anti-

---

[9] The Complaint also includes the phrase "co-religionist doctrine" in the header for Count III. The Complaint does not define this phrase, which does not appear in any judicial opinion available on Lexis or Westlaw. Instead, it is principally used in briefs filed by Plaintiffs' counsel in other cases. *See, e.g.*, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and Reply Brief in Support of its Preliminary Injunction Motion at 32, *Christian Healthcare Ctr., Inc. v. Nessel*, No. 1:22-cv-00787, 2022 WL 20112900 (W.D. Mich. Mar. 29, 2023). To the extent Plaintiffs invoke this phrase to suggest that they have a right to hire or fire employees or applicants, regardless of the position at issue, based on whether those individuals share Plaintiffs' religion, they misunderstand the law, *infra* pages 31-32, and, in any event, have failed to plausibly plead that the Amendments prevent them from doing so.

discrimination statute] on the basis that a future employee may be covered by the ministerial exception is not appropriate," *CompassCare v. Cuomo*, 465 F. Supp. 3d 122, 164 (N.D.N.Y. 2020), *aff'd in part, vacated in part on other grounds*, 125 F.4th 49 (2d Cir. 2025). Second, in any event, Plaintiffs acknowledge that at least some of their employees are not ministerial. Compl. ¶¶ 240-41. Since Plaintiffs do not request—or plead adequate facts to support a claim for—any narrower relief that applies only to ministerial employees, they cannot state a claim based on the ministerial exception.

Plaintiffs' invocation of the general principle of religious autonomy fares no better. That principle "does not mean that religious institutions enjoy a general immunity from secular laws," and its application to the employment-law context is already captured by the ministerial exception. *Our Lady of Guadalupe*, 591 U.S. at 746. Courts, including the Seventh Circuit, have therefore rejected similar attempts to expand the principle to create unbridled immunity for religious employers. *See Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1116 (7th Cir. 2024) ("No court has ever held that the First Amendment doctrine of church autonomy establishes a constitutional right to immunity from trial in cases where non-ministerial employees allege non-religious discrimination."); *O'Connell v. U.S. Conf. of Cath. Bishops*, 134 F.4th 1243, 1258 (D.C. Cir. 2025) ("The church autonomy doctrine protects against judicial interference in ecclesiastical matters; it does not provide religious organizations with a blanket immunity from suit, discovery, or trial."); *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 58 (9th Cir. 2024) ("If the First Amendment barred any inquiry into religious employers . . . the ministerial exception would be elevated from an affirmative defense to an affirmative immunity. . . . A religious employer is not given carte blanche with respect to all employees, ministerial and non-ministerial alike."). After all, any other conclusion would swallow the ministerial exception, as courts would have no reason to engage in

the totality-of-the-circumstances inquiry to determine whether an employee is ministerial if, regardless of the result, the religious-autonomy doctrine requires the same result. *See Our Lady of Guadalupe*, 591 U.S. at 752. Nor do any of the cases Plaintiffs offer in support of a broader form of church autonomy, ECF 30 at 26, 28-29, change this conclusion: each involved either ministerial employees, a specific statutory scheme not at issue here, or both. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 719-20 (2014) (applying federal Religious Freedom Restoration Act to for-profit corporation without discussion of ministerial exception or church autonomy); *Demkovich*, 3 F.4th at 978 (applying ministerial exception and explaining that "ministerial employment differs from nonreligious employment, or even from nonministerial employment within a religious organization"); *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 651, 658 (10th Cir. 2002) (concluding statements concerning "an internal church personnel matter" regarding youth minister were not actionable); *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 623 (6th Cir. 2000) (applying federal Title VII to employment dispute involving "ordained . . . lay minister"); *Little v. Wuerl*, 929 F.2d 944, 948 (3d Cir. 1991) (applying Title VII to employee whose position had "religious significance").[10] Count III thus fails to state a claim.

### III. Plaintiffs' Motion for a Preliminary Injunction should be denied.

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). Accordingly, "an applicant for preliminary relief bears a significant burden": it must make a "strong showing" that it is likely to succeed on the

---

[10] *Little* described the employee at issue—a parochial-school teacher—as a "non-minister," but not as a non-ministerial employee. 929 F.2d at 948. The court was merely explaining that the ministerial exception does not apply only to ordained clergy members. *Id.* at 947-48. Indeed, the Supreme Court has since held that parochial-school teachers, like the employee in *Little*, generally are ministerial employees. *See Our Lady of Guadalupe*, 591 U.S. at 758-62.

merits and "that irreparable injury is likely in the absence of an injunction"; the balance of equities must "tip in the applicant's favor"; and "the injunction must be in the public interest." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) (cleaned up).

### A. There is no likelihood of success on any of Plaintiffs' First Amendment claims.

Plaintiffs seek the "very far-reaching power" of preliminarily enjoining Defendants from enforcing the Act against them with respect to reproductive health decisions. *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quotations omitted). Plaintiffs cannot succeed on the merits of any of their claims because they lack Article III standing, as explained in Section I.A. "A difficult question as to jurisdiction" makes success on the merits "more *unlikely* due to potential impediments to even reaching the merits." *Munaf v. Green*, 553 U.S. 674, 690 (2008).

Even setting aside the jurisdictional infirmities, Plaintiffs' Motion fails as a matter of law. Their preliminary injunction briefing added no evidence that would alter the motion-to-dismiss merits analysis set forth above. The Complaint cannot survive a motion to dismiss, let alone satisfy the standard for obtaining preliminary relief, which is heightened from the pleading stage and requires a "strong showing" of a likelihood of success on the merits. *See Ill. Republican Party*, 973 F.3d at 763. Defendants therefore incorporate by reference Sections II.A.-C. and E.[11] into their response to Plaintiffs' Motion. Plaintiffs have failed to state a claim; Plaintiffs also are not entitled to a preliminary injunction: they gave no "demonstration of how [they] propose[] to prove the key elements" of any claim. *Id.* at 763. Furthermore, unlike in adjudicating a motion to dismiss, at the

---

[11] Plaintiffs' Complaint contains a claim under the Equal Protection Clause of the Fourteenth Amendment in addition to First Amendment claims. Compl. ¶¶ 273-81. However, their Motion for Preliminary Injunction seeks relief based on alleged violations of the First Amendment only and makes no arguments as to the Equal Protection Clause. ECF 29, 30. Plaintiffs therefore waived any argument for preliminary injunctive relief based an Equal Protection violation. *See Apollo v. Stasinopoulos*, No. 18-cv-6475, 2022 WL 1092227, at *2 (N.D. Ill. Apr. 12, 2022) ("[A]ny arguments [Plaintiff] could have raised [but did not] are deemed waived." (citing *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021))).

preliminary injunction stage, the Court does not accept Plaintiffs' allegations as true, nor does it take all inferences in Plaintiffs' favor. *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Considering that the Complaint failed to state a First Amendment claim under Rule 12(b)(6) even under the more permissive motion-to-dismiss standard, *supra* Sections II.A.-C. and E, their Motion is well below the threshold for injunctive relief. In short, each of Plaintiffs' four First Amendment claims are meritless and their preliminary injunction briefing does nothing to cure the legal deficiencies of their Complaint.

### B. Plaintiffs will not suffer irreparable harm without a preliminary injunction.

Even though some challenged aspects of the Act and Department guidance have been in effect for years,[12] Plaintiffs now claim that they will suffer irreparable harm without a preliminary injunction. However, Plaintiffs failed to demonstrate an injury-in-fact for standing purposes, much less to "establish that irreparable harm is likely without an injunction." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 787 (7th Cir. 2011). Plaintiffs dedicated a paltry paragraph to this mandatory requirement in their Motion, relying on the holding in *Elrod v. Burns* that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976); *see* ECF 30 ("P.I. Memo.") at 29-30. But Plaintiffs omitted a critical element of *Elrod*'s irreparable harm analysis: that the alleged loss of a First Amendment freedom was *likely*. *See* 427 U.S. at 373 ("First Amendment interests were either threatened or in fact being impaired at the time relief was sought"); *U.S. Army Corps*, 667 F.3d at 788 ("irreparable harm must also be likely"). In short, "the *Elrod* proposition" on which Plaintiffs rely necessarily "presuppose[s] that some curtailment of speech will occur if the preliminary

---

[12] Section 5/2-102(J) and (K) have been in effect since 2015 and the non-regulatory Department guidance that Plaintiffs reference throughout their Complaint and preliminary injunction briefing was issued in March 2023.

injection is denied."[13] *Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 129 (7th Cir. 1982). Plaintiffs did not establish that they are *likely* to suffer any First Amendment injury— not under a motion-to-dismiss standard, much less a preliminary-injunction one requiring a "strong showing" of a likelihood of success—so they have not shown irreparable harm. *See Ill. Republican Party*, 973 F.3d at 763; *Cassell*, 990 F.3d at 550 ("equitable considerations weigh against granting a preliminary injunction at this time, when the prospect of irreparable injury to the plaintiffs is very low").

Plaintiffs' most concrete purported irreparable harm boils down to trepidations about filling three[14] open job postings. P.I. Memo. at 30. Plaintiffs claim that they want to include language about their policies against hiring or retaining individuals who have made or will make certain reproductive health decisions in job postings, but have refrained out of fear that Defendants will enforce the Act against them. *Id.* Ex. 1 at ¶ 43, Ex. 2 ¶¶ 40-41. PCC further states that it is harmed because the Act disallows its policy of having new employees sign a commitment form "promising that they will refrain from referring, assisting in the procurement of, providing, or receiving an abortion." *Id.* Ex. 1 ¶ 38. PCC also claims that it is chilled from engaging a staffing company to fill its open nursing position because that would "increase visibility" of its employment policies. *Id.* ¶ 44.

---

[13] Plaintiffs also cited the summary judgment opinion in *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805 (E.D. Mo. 2018). P.I. Memo. at 30. The court there had already found the plaintiffs were entitled to summary judgment and was considering whether plaintiffs were entitled to a *permanent* injunction to prevent irreparable harm. 349 F. Supp. 3d at 820-24. *Our Lady's Inn* thus applies to a different stage of the proceedings than the one presented here, and clarifies that under *Elrod*, there must be a likely deprivation of rights before a court can assess irreparable harm.

[14] The Complaint alleges that PCC has two job openings—for a receptionist and staff nurse—and the Diocese has two—for a Respect Life Advocate and an Associate General Counsel. Compl. ¶¶ 57, 92. But the preliminary injunction briefing states that PCC only has the staff nurse position available. P.I. Memo. at 4. These evolving facts further demonstrate the speculative nature of Plaintiffs' claims that their hiring practices are harmed by the Act.

Plaintiffs' own submissions demonstrate that these are sham allegations meant to fabricate a chilling effect where none exists. Their current job listings—which they do not allege they have altered in any way or withdrawn in response to the Amendments—elsewhere communicate functionally the same information they propose to add. *See* Compl. Ex. 5, 6 (PCC's job listings requiring that an applicant "[e]xhibits a strong pro-life commitment and upholds a lifestyle of sexual purity"); *id.* Ex. 8, 9 (diocesan job listings requiring an applicant to be a "[p]racticing Catholic in full communion with the teachings of the Church"). As Plaintiffs are already disseminating this allegedly chilled information, their speech is not in fact chilled and thus they have not established irreparable harm.

Plaintiffs also failed to adequately demonstrate that excluding these statements and commitment forms from their hiring process will actually inhibit their ability to "fill open positions with applicants who abide by their beliefs," let alone that that inhibition would cause irreparable harm. P.I. Memo. at 30. Plaintiffs are established Christian organizations that "proclaim and strive to live out" the "nearly 2,000 years [of] Christian tradition" of opposing "abortion, sterilization, and contraception." P.I. Memo. at 1; *see also id.* Ex. 1 at ¶¶ 3-21, Ex. 2 at ¶¶ 3-13. Applicants for Plaintiffs' three open positions likely self-select already, deciding whether to apply based on how their own beliefs align with Plaintiffs' and whether they want to actively support pro-life endeavors. It is difficult to imagine, for example, an individual who is unrepentant and outspoken about having obtained abortion care seeking employment as the Respect Life Advocate at the Diocese. *Id.* at Ex. 2 at ¶¶ 25-30; *see supra* pages 7-8. And being prohibited from advertising discriminatory practices is not legal harm. *See Rumsfeld*, 547 U.S. at 62. Thus, Plaintiffs' claims of irreparable harm are unsupported, wholly speculative, and cannot support a preliminary injunction. *U.S. Army Corps*, 667 F.3d at 788 ("[f]or preliminary relief to be granted, the

irreparable harm must also be likely."); *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1325 (7th Cir. 2022) (affirming denial of preliminary injunction on the grounds that alleged irreparable harms were too speculative).

Nor did Plaintiffs establish that the Act violates their First Amendment rights by "'putting [them] to the choice' of violating their religious beliefs or curtailing their mission." P.I. Memo. at 30 (quoting *Fulton*, 593 U.S. at 532). Though their Motion contains conclusory statements that the Act "forces Plaintiffs to choose between remaining faithful to their missions or abandoning their faith-based policies," P.I. Memo. at 38, their reliance on *Fulton* is misplaced. *Fulton* involved a city's refusal to contract with a religious organization unless the organization changed the way it *administered its services*—namely, by taking the active step of certifying same-sex couples as foster parents. 593 U.S. at 527-28. By contrast, the Act does not require Plaintiffs to change anything about how they administer their respective services, leaving them free to pursue their missions without a preliminary injunction.

**C. Equitable factors weigh against a preliminary injunction.**

The Court does not need to weigh the equitable factors because Plaintiffs proved neither success on the merits nor irreparable harm. *See Doe*, 43 F.4th at 791. If the Court does consider the balance of hardships, "[u]nder the sliding scale approach, . . . [b]ecause Plaintiffs' claims have little likelihood of succeeding on the merits, they are not entitled to preliminary relief unless they show that the scales weigh heavily in their favor." *Ill. Republican Party*, 470 F. Supp. 3d at 827; *see also Doe*, 43 F.th at 791 n.4. Plaintiffs cannot meet this burden. The entirety of their argument on this issue consists of an undeveloped quote from *Slattery*, 61 F4th at 289-90. P.I. Memo. at 30. But *Slattery* did not involve consideration of equitable factors; it was an appeal of a decision on a motion to dismiss. Even ignoring the procedural discrepancies, the quotation from *Slattery* does nothing to overcome the severe deficiencies in Plaintiffs' case. Plaintiffs ignore the strong public

interest in protecting against employment discrimination, not to mention the scant evidence of actual harm that the Amendments cause Plaintiffs. *See Crosspoint Church v. Makin,* 719 F. Supp. 3d 99 (D. Me. 2024), *judgment entered,* No. 1:23-CV-00146, 2024 WL 2830931 (D. Me. June 4, 2024) (holding equities weigh against preliminarily enjoining state anti-discrimination law as "[t]he public [] has a strong interest in the state being able to effectively combat discrimination.").

**Conclusion**

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). In the alternative, the Court should order expedited jurisdictional discovery into Plaintiffs' standing to assert a pre-enforcement challenge to the Act. The Court should also deny Plaintiffs' Motion for a Preliminary Injunction.

Dated: May 30, 2025

KWAME RAOUL
*Attorney General of Illinois*

*/s/ Emily Hirsch*
Karyn L. Bass Ehler
Sarah J. Gallo
Holly Berlin
Emily Hirsch
Office of the Illinois Attorney General
Special Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
312-814-3000
Karyn.BassEhler@ilag.gov
Sarah.Gallo@ilag.gov
Holly.Berlin@ilag.gov
Emily.Hirsch@ilag.gov

*Counsel for Defendants*
