**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

| | |
|---|---|
| The Pregnancy Care Center of Rockford and the Diocese of Springfield in Illinois,<br><br>        Plaintiffs,<br><br>v.<br><br>James Bennett, in his official capacity as Director of the Illinois Department of Human Rights, and Kwame Raoul, in his official capacity as Illinois Attorney General,<br><br>        Defendants. | No. 3:25-cv-50127<br>Hon. Rebecca R. Pallmeyer |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

KWAME RAOUL
*Attorney General of Illinois*

Karyn L. Bass Ehler
Sarah J. Gallo
Holly F.B. Berlin
Emily Hirsch
Office of the Illinois Attorney General

*Counsel for Defendants*

**Table of Contents**

Table of Authorities..................................................................................................................... ii

I.    The Complaint should be dismissed for lack of standing under Rule 12(b)(1). ..................... 1

    A.   Plaintiffs failed to plausibly allege that they will violate the Act or the Amendments....... 2

    B.   Plaintiffs failed to plausibly allege any chilling effect on their speech. ............................. 6

    C.   Plaintiffs' compliance with the Act does not plausibly injure their core business activities. 7

II.   Plaintiffs failed to state a claim on which relief can be granted under Rule 12(b)(6). ........... 1

    A.   The Court should dismiss Plaintiffs' expressive association claim. ................................... 8

    B.   Plaintiffs' Free Exercise claim fails because the Act is neutral and generally applicable. 10

    C.   Plaintiffs' novel ministerial exception-church autonomy claim must be dismissed. ........ 13

    D.   Plaintiffs' Free Speech claim fails because the Amendments are content- and viewpoint-
    neutral. ................................................................................................................................ 15

    E.   Plaintiffs' Free Speech claim also fails because the Amendments' notice requirement is
    factual and uncontroversial commercial speech. ................................................................ 17

    F.   Plaintiffs' Equal Protection claim fails because they have not identified a similarly
    situated comparison group, and because the Amendments do not unequally burden Plaintiffs.
        18

i

**Table of Authorities**

## Cases

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023)........................................................................ 8

*Billard v. Charlotte Cath. High Sch.*, No. 3:17-cv-00011, 2021 WL 5037531 (W.D.N.C. Sept. 3,

2021) ...................................................................................................................................... 9

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ........................................................................ 10

*Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) ............................................................................... 2

*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 651 (10th Cir. 2002) ............ 15

*Christian Legal Soc. v. Walker*, 453 F.3d 853 (7th Cir. 2006) ....................................................... 7

*CompassCare v. Hochul*, 125 F.4th 49 (2d. Cir. 2025) ............................................................. 9, 19

*Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968 (2021) ................... 16, 18

*Dep't of Educ. v. Brown*, 600 U.S. 551 (2023)............................................................................... 4

*Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872 (1990)............................... 11, 13

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975)................................................................ 16

*Evergreen Assoc., Inc. v. City of N.Y.*, No. 20-cv-0580, 2025 WL 416903 (E.D.N.Y. Feb. 6, 2025)

.............................................................................................................................................. 2

*Evergreen Assoc., Inc. v. Hochul*, No. 1:20-cv-0112, 2025 WL 359074 (N.D.N.Y. Jan. 31, 2025) 2

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)........................................................... 2, 7

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d. Cir. 1999)

............................................................................................................................................ 13

*Fulton v. City of Phila.*, 593 U.S. 522 (2021) .............................................................................. 11

*Garrick v. Moody Bible Inst.*, 95 F.4th 1104 (7th Cir. 2024) ....................................................... 15

*Gen. Conf. of Seventh-Day Adventists v. Horton*, --- F. Supp. 3d ----. 2025 WL 1703806 (D. Md. June 18, 2025) ........................................................................................................... 12

*Hishon v. King & Spaulding*, 467 U.S. 69 (2000) .......................................................... 9

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557 (1995) ... 10

*Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631 (7th Cir. 2017) .................................. 12

*In re Traxler & Matter Dei High School*, Charge No. 1990SF0159, 1992 WL 721928 (Ill. Hum. Rts. Comm'n Aug. 12, 1992) ...................................................................................... 11

*Lincoln Fed. Lab. Union No. 19129, A.F. of L. v. Nw. Iron & Metal Co.*, 335 U.S. 525 (1949) .... 8

*McMahon v. World Vision Inc.,* 704 F. Supp. 3d 1121 (W.D. Wash. 2023) ..................... 9

*Nat'l Inst. for Life Advocates v. Raoul*, 685 F. Supp. 3d 688 (N.D. Ill. 2023) ............... 7

*O'Connell v. U.S. Conf of Cath. Bishops.*, 134 F.4th 1243 (D.C. Cir. 2025) ................ 15

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020). ..................... 14

*Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805 (E.D. Mo. 2018) ................. 17

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501 (7th Cir. 2024) ............................................................................................................... , 5

*Reget v. City of La Crosse*, 595 F.3d 691 (7th Cir. 2010) .......................................... 18

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47 (2006) ......................... 6

*Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024) ..................................... 15

*Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. 696 (1976) ............. 15

*Slattery v. Hochul*, 61 F.4th 278 (2d. Cir. 2023) ................................................... 9, 17

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ......................................... 1

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 496 F. Supp. 3d 1195 (S.D. Ind. 2020) ................................................................................................................. 9

iii

*Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019) ..................................................... 17

*United States v. Lee*, 455 U.S. 252 (1982) ..................................................................................... 11

*Vill. of Arlington Heights v. Metro. Hous. Development Corp.*, 429 U.S. 252 (1977).................. 19

*W. Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937) ...................................................................... 8

*Wisconsin v. Mitchell*, 508 U.S. 476 (1993)....................................................................................

*Young v. Ill. Hum. Rts. Comm'n*, 974 N.E.2d 385 (Ill. App. Ct. 1st Dist. 2012)............................ 5

*Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626 (1985) .................... 17

**Statutes**

42 U.S.C. § 2000e, *et seq*.............................................................................................................. 12

775 ILCS 5/1-102(A)....................................................................................................................... 19

775 ILCS 5/1-103(O-2)................................................................................................................ 5, 19

775 ILCS 5/2-101(B)(2) ................................................................................................................. 11

775 ILCS 5/3-106 ........................................................................................................................... 19

775 ILCS 5/4-104 ........................................................................................................................... 19

**Rules**

45 C.F.R. § 164.512 .......................................................................................................................... 8

**Introduction**

Plaintiffs' oversized[1] opposition brief, Dkt. 42 ("Pl. Opp.") and newly submitted declarations do nothing to shore up their allegations with respect to standing, nor did Plaintiffs state a claim as to any of the counts in their Complaint. Their brief consists entirely of conclusory allegations and arguments already posited in their Complaint and Motion for a Preliminary Injunction, in addition to new declarations that only prove Plaintiffs' lack of standing. Instead, their new declarations demonstrate that Plaintiffs seek to hire applicants based on alignment with their overall pro-life mission and beliefs, regardless of their reproductive health decisions. The declarations also show that Plaintiffs effectively communicate their desire to hire individuals who reflect their pro-life beliefs such that job-seekers self-select out of the hiring process. Accordingly, Defendants respectfully request that this Court dismiss the Complaint.

## I. The Complaint should be dismissed for lack of standing under Rule 12(b)(1).

In a pre-enforcement First Amendment challenge like this, Plaintiffs could establish injury in fact one of two ways. First, they could plausibly allege an "intent[] to engage in a course of conduct arguably affected by" the Act and that they "face[] a credible threat" that the Act "will be enforced against" them when they do. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020). Alternatively, Plaintiffs could "show a chilling effect on [their] speech that is objectively reasonable, and that [they] self-censor[] as a result."[2] *Id.* Plaintiffs face the additional hurdle of establishing organizational standing as the alleged injury is to the organizations themselves. Thus, they must show that the

---

[1] Like their Motion for a Preliminary Injunction briefing, Plaintiffs' brief does not appear to be 2.0 spaced in contravention of Local Rule 5.2(e).

[2] Contrary to Plaintiffs' protests, Pl. Opp. 7, Defendants set forth this framework in their brief. Dkt. 41 ("Memo.") 5-6.

Amendments "directly affected and interfered with [their] core business activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). Plaintiffs failed to meet any of these standards, and the Complaint should therefore be dismissed.

### A. Plaintiffs failed to plausibly allege that they will violate the Act.

Plaintiffs' arguments and new declarations do not show that they will "arguably" violate the Act. *Brown v. Kemp*, 86 F.4th 745, 762 (7th Cir. 2023). Plaintiffs simply reiterate allegations from their Complaint about purported violations of the Act without responding to any of Defendants' arguments about the shortcomings of these allegations. Pl. Opp. 10-11, 13. Plaintiffs' bald allegations that they generally violate the Act without pointing to specific adverse employment actions they have taken against any individual employee or applicant based on a reproductive health decision fail to show injury. *See Evergreen Assoc., Inc. v. Hochul*, No. 1:20-cv-0112, 2025 WL 359074 at *4 (N.D.N.Y. Jan. 31, 2025); *Evergreen*, 2025 WL 416903 at *11.

Plaintiffs' new declarations only prove Defendants' argument that "Plaintiffs' hiring criteria for individuals who share their religious commitments" make it "highly unlikely" that any employees or applicants would make reproductive health choices counter to those religious commitments. Memo. 7. Their newly filed declarations demonstrate that Plaintiffs' communication of their pro-life beliefs and missions to applicants effectively filters for applicants who adhere to those beliefs and seek to further Plaintiffs' pro-life efforts. *See generally* Pl. Opp. Ex. 1, 2. As a result, it is highly implausible that anyone who has made a disapproved reproductive health decision and does not share Plaintiffs' pro-life beliefs would apply for or accept a job offer from Plaintiffs. The PCC supplemental declaration illustrates this perfectly: an individual called PCC "to learn about" the posted receptionist position and "declined to move forward" with applying for it "upon learning of PCC['s] pro-life religious mission" because "she did not express agreement

2

with [PCC's] pro-life beliefs and policies." Pl. Opp. Ex. 1 ¶ 15. Thus, PCC did not have to take any adverse employment action against this individual based on her reproductive health decisions; PCC shared its overall beliefs and mission, and the individual self-selected out.

Plaintiffs' new declarations also make it no more plausible that they would ever learn about their employees' and job applicants' reproductive health decisions in the first place. For current employees, Plaintiffs merely repeat that "[s]ome of the most powerful pro-life advocates are those who repent from past reproductive decisions." Pl. Opp. at 10 (citing Compl. ¶ 132 and Pl. Opp. Ex. 2 ¶ 39). And the only "differential treatment" of employees that Plaintiffs point to is based on whether employees share Plaintiffs' pro-life beliefs (not whether they obtained abortion care), Pl. Opp. at 10-14, which is not proscribed conduct under the Act.

Plaintiffs' new declarations broadly state that "[t]heir applications and interview processes are designed to uncover non-compliant reproductive conduct" by applicants. Pl. Opp. 11 (citing declarations); *see also id.* at 13. For the Diocese, generalized questioning in interviews to ensure compliance with Catholic teaching is the only factual support for their claim that they would plausibly obtain an individual applicant's protected health information regarding one's reproductive health decision. *See* Pl. Opp. Ex. 2. The suggestion that these unspecified questions will uncover this information, which will then create an opportunity for Plaintiffs to take an adverse employment action and be subject to an enforcement action is simply not "concrete and particularized" as needed to demonstrate an "actual or imminent" injury in this pre-enforcement posture. *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501, 505 (7th Cir. 2024) (quotation omitted). "All we have before us is a policy on paper" about interview topics "without concrete facts about its implementation." *Id.* at 505-06.

3

On the other hand, PCC's approach to job applicants further proves that Plaintiffs seek to discriminate based on applicants' beliefs, not on a reproductive health decision. Though PCC asserts that they violate the Act by subjecting applicants to differential treatment based on whether they have had an abortion, their supplemental declaration indicates that the required "season of healing" ensures conformance with PCC's overarching belief system. Pl. Opp. Ex. 1 ¶¶ 8-11, Ex. 1 (requiring "one-to-one Bible study…to receive deeper healing and freedom"). These statements thus underscore that, in practice, Plaintiffs assess applicants based on their beliefs about abortion rather than based on their reproductive health decisions.

With respect to the Act's notice requirement, Plaintiffs admit that they "*already* violate the Act's Notice Clause" because they did not and do not comply with the Act's preexisting requirement that employers post notices informing employees of their rights under the Act. Pl. Opp. 10-11 (emphasis original). But Plaintiffs' apparent preexisting lack of compliance with the Act's preexisting notice requirement is not sufficiently traceable to the Amendments to confer standing on Plaintiffs. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023).

Lastly, Plaintiffs' minimal attempt to distinguish the directly analogous *Evergreen* decisions falls short. Most importantly, like the *Evergreen* plaintiffs, Plaintiffs here cite to no instances in which they have ever taken an adverse employment action against a job applicant or employee based on a reproductive health decision. PCC did not even cite to any instance in which they have required an applicant who has obtained abortion care to participate in their "post abortion program." Pl. Opp. Ex. 1. The courts in the *Evergreen* decisions concluded that general pro-life hiring criteria is not enough to demonstrate intent to violate the Act, especially considering that Plaintiffs' hiring decisions are based on the applicant's beliefs, and "not on the decision to obtain reproductive health services itself." *Evergreen*, WL 416903, at *11. Likewise, Plaintiffs'

4

allegations show that their hiring is based on an applicant's beliefs, not on their reproductive decisions, and thus Plaintiffs failed to show that they arguably violate the Act. *See* Pl. Opp. Ex. 1 at Ex. 3 (qualifications for PCC Development Director include "strong pro-life commitment and upholds a lifestyle of sexual purity"), Ex. 2 (Diocese questions applicants to ensure compliance "with faith-based policies").

PCC states that it has "refused to hire people who failed to satisfy its pro-life requirements," Pl. Opp. 12 (citing P.I. Mot. Ex. 1 ¶ 18), but again, Plaintiffs rely on a broad generality instead of any specific allegations, which are required to state a claim in this pre-enforcement context. *See Parents Protecting Our Child.*, 95 F.4th at 505-06. "Fail[ure] to satisfy pro-life requirements" is vague and encompasses far more conduct than making a disapproved-of reproductive health decision as defined in the Act, 775 ILCS 5/1-103(O-2). PCC's statement could mean that they refused to hire individuals based on any number of "pro-life requirements" other than discrimination based on a reproductive health decision (*e.g.*, declining to extend an offer because of an applicant's statement that they are not pro-life or that their pro-life beliefs do not squarely match Plaintiffs'). PCC's statement in its newly filed declaration does not speak to PCC's previous or intended violations of the Amendments. Pl. Opp. Ex. 1. Similarly, the Diocese's cryptically imprecise statement that they have "taken adverse employment action against employees for violating its conduct policy in matters of human sexuality" is vague, overbroad, and generalized such that it does not meet the requirements of specificity to succeed on a pre-enforcement challenge to the Amendments. Pl. Opp. 12 (citing P.I. Mot. Ex. 2 ¶ 16). The Diocese's conduct policy only states that employees must adhere to the "doctrine and moral teaching of the Catholic

Church," whose teachings on human sexuality extend well beyond reproductive health.[3] P.I. Mot. Ex. 2 at Ex. A.

### B. Plaintiffs failed to plausibly allege any chilling effect on their speech.

Plaintiffs' manufactured allegations of chilled speech are woefully deficient to establish a constitutional injury. They amount to nothing more than "want[ing] to publish [] statements clarifying that they cannot hire employees who make objectionable reproductive [health] decisions" but "refrain[ing] from doing so." Pl. Opp. 7. As Defendants previously explained, the exact message of these "clarifying statements"—that employees must adhere to Plaintiffs' pro-life beliefs—is already listed explicitly in their job listings and thus is not chilled. Memo. 38. Even if Plaintiffs were chilled from including these "statements," however, the alleged "speech" Plaintiffs claim to be chilled from is not speech protected by the First Amendment. The fact that a statute prohibiting discrimination requires employers to refrain from language expressing discriminatory intent in job postings "hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Rumsfeld v. Forum for Acad. & Inst. Rts, Inc.*, 547 U.S. 47, 62 (2006). Likewise, PCC's alleged hesitancy in engaging a staffing company to fill nursing positions (Pl. Opp. Ex. 1 ¶¶ 20-21) does not qualify as chilled speech because it is not speech at all—it instead amounts to an employment decision, which, as discussed below*,* is not afforded First Amendment protections. *See infra* pages 8-10.

In a last-ditch effort to show chilled speech, Plaintiffs cite *National Institute for Life Advocates v. Raoul*, 685 F. Supp. 3d 688 (N.D. Ill. 2023) ("*NIFLA*"). They claim that this case

---

[3] Plaintiffs are incorrect that Defendants' Motion to Dismiss does "not materially dispute" that Plaintiffs face a credible threat of enforcement of the Act. Pl. Opp. 14. As Defendants explained, Memo. 7-11, Plaintiffs simply failed to make the required threshold showing that the Amendments "arguably cover[]" their alleged conduct and thus could ever be enforced against them. Pl. Opp. 14 (quoting *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)).

demonstrates that the Amendments unconstitutionally chill their speech because Defendants made public statements supporting the Amendments when they became law, as the Attorney General did for the law at issue in *NIFLA*. Pl. Opp. 9. But the Court in *NIFLA* relied on key facts in its pre-enforcement standing analysis that are absent here, rendering *NIFLA* inapplicable. In finding the plaintiffs' speech in *NIFLA* had been chilled, the Court first considered: how the plaintiffs "had stopped the production and distribution of a pamphlet as a direct result of" the challenged law; cancelled a training; reconsidered a billboard campaign; and saw lower attendance at prayer vigils, with one plaintiff considering closure. 685 F. Supp. 3d at 699. No such concrete impact on Plaintiffs' speech is alleged here.

### C. Plaintiffs' compliance with the Act does not plausibly injure their core business activities.

Despite the "intensity of [Plaintiffs'] interest," their conclusory allegation that complying with the Act would impair their missions is insufficient to establish organizational standing. *FDA*, 602 U.S. at 394 (quotation omitted). Plaintiffs' reliance on *Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir. 2006), does not salvage their argument. In that case, the Court held that forcing a student organization that disapproved of homosexual activity to accept members who approve of or engage in such activity "would cause the group as it currently identifies itself to cease to exist." *Id.* at 863. Plaintiffs' allegations prove the exact opposite is true here—Plaintiffs' employment of individuals who have received abortion care has had no impact on Plaintiffs' pro-life missions, and, as Plaintiffs allege, in fact strengthens their missions when such employees have "repented" in accordance with Plaintiffs' beliefs, undercutting Plaintiffs' claimed impact. *See* Compl. ¶ 132. Another distinction from *Walker* is that, unlike stances on homosexuality, reproductive health decisions are legally protected confidential health information, *see* 45 C.F.R.

7

§ 164.508, making it highly unlikely that such decisions would come to light in the first place. Accordingly, the Court should dismiss the Complaint under Rule 12(b)(1) for lack of standing.

## II. Plaintiffs failed to state a claim on which relief can be granted under Rule 12(b)(6).

### A. The Court should dismiss Plaintiffs' expressive association claim.

Plaintiffs' response shows that they cannot plead around binding precedent establishing that the First Amendment does not protect expressive association in employment contexts. Plaintiffs first seem to claim that freedom of expressive association applies in the employment context simply because it is a First Amendment right. Pl. Opp. 20 (citing *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023)). Plaintiffs' reliance on *303 Creative* is inapposite because, unlike in this case, it involved "pure speech" expressed by a commercial entity, not an employment decision by the business. 600 U.S. at 587. This is a critical difference because the government routinely regulates the employer-employee relationship, while it is generally prohibited from interfering with entities' pure speech. *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937); *Lincoln Fed. Lab. Union No. 19129, A.F. of L. v. Nw. Iron & Metal Co.*, 335 U.S. 525, 536 (1949). Plaintiffs cite no case law to support their importation of theory from one First Amendment context to another. Pl. Opp. 20. Defendants do not claim, as Plaintiffs suggest, that the First Amendment does not apply to employers; it simply does not create a right for employers to discriminate as they see fit. *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) ("Title VII [does not] infringe[] employers' First Amendment rights."). Plaintiffs ignore several cases holding that expressive association does not apply in the employment context. *E.g.*, *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 496 F. Supp. 3d 1195, 1209 (S.D. Ind. 2020); *Billard v. Charlotte Cath. High Sch.*, No. 3:17-cv-00011, 2021 WL 4037431 at *22-23 (W.D.N.C. Sept. 3, 2021) (overruled on other grounds);

*McMahon v. World Vision Inc.,* 704 F. Supp. 3d 1121, 1144-45 (W.D. Wash. 2023), *appeal pending*, No. 24-3259 (9th Cir. May 22, 2024).

Plaintiffs claim that the Supreme Court in *Hishon* "applied" the test for expressive association, Pl. Opp. 21, but this "application" was limited to one sentence explaining that employing a woman would not infringe on the law firm's associational rights. *Hishon v. King & Spaulding*, 467 U.S. 69, 78 (1984). In the same breath, the Court made clear that discrimination based on protected classifications "has never been accorded affirmative constitutional protections." *Id.* (quotation omitted).

Plaintiffs also rely on *CompassCare v. Hochul* and *Slattery v. Hochul*. However, *Slattery* does not directly address Plaintiffs' claimed expansion of the expressive association analysis to the employment context. 61 F.4th 278, 286-91 (2d Cir. 2023). And in *CompassCare*, the Second Circuit distinguished between an employment relationship and a voluntary membership association, creating a higher standard for employers attempting to make an expressive association claim. The *CompassCare* test requires an employer to demonstrate that a challenged statute "burdens its associational rights with respect to *specific employment decisions*." 125 F.4th 49, 62 (2d Cir. 2025) (emphasis added). Plaintiffs' action, which seeks a total bar as a pre-enforcement challenge and is not limited to any actual specific employment decisions, must be dismissed under their own cited case law.

Finally, Plaintiffs' conclusory statements about the Act's impact on the "credibility" of their employees fail to show that the Act burdens their ability to express their message. Pl. Opp. 17, 19, 23-24. Again, the mere presence of employees who may have made a private reproductive health decision has no communicative impact whatsoever. Plaintiffs' characterization of *Dale* as suggesting that the Court may not evaluate this factor of expressive association analysis cherry-

9

picks language and fails to meaningfully engage with the holding in *Dale*. Plaintiffs assert that the Court may not "inquire further" about what would impair an organization's viewpoint, but this quotation actually refers to the Court refraining from questioning what that viewpoint is. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 651 (2000).[4] In fact, though the Court expressed that an expressive association's view of what would impair its expression is entitled to deference, it *did* inquire further and concluded that Dale's inclusion in the Boy Scouts impacted its message because of the expressive impact of his inclusion as a gay rights *advocate*, not as a gay individual. *Id.* at 653 (citing *Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. of Boston*, 515 U.S. 557, 574-75 (1995) where "the parade organizers did not wish to exclude the GLIB members because of their sexual orientations, but because they wanted to march behind a GLIB banner"). In short, Plaintiffs skip an essential step of the *Dale* analysis—the actual communicative function of the inclusion at issue—and impermissibly attempt to "erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message." *Id. Dale* rejected this application of expressive association and this Court must do the same.

### B. Plaintiffs' Free Exercise claim fails because the Act is neutral and generally applicable.

A neutral and generally applicable law does not violate the Free Exercise Clause merely because it impacts a particular religious practice. *Emp't Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 878-79 (1990). Plaintiffs contend that the Amendments are not neutral and generally applicable because they contain categorical exemptions for certain types of secular and religious

---

[4] The full relevant quotation states: "The Boy Scouts asserts that it 'teach[es] that homosexual conduct is not morally straight,' and that it does 'not want to promote homosexual conduct as a legitimate form of behavior'. We accept the Boy Scouts' assertion. We need not inquire further to determine the nature of the Boy Scouts' expression with respect to homosexuality." 530 U.S. at 651.

employers, Pl. Opp. 25, but they are wrong. A law with categorical exemptions "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Phila.*, 593 U.S. 522, 534 (2021). The Act is generally applicable under this standard as it has an exemption for religious corporations in 775 ILCS 5/2-101(B)(2). The scope of this exemption is adjudicated when a target of an enforcement action raises it as a defense; it turns on "whether the corporation's purpose and character are primarily religious."[5] *In re Traxler & Matter Dei High Sch.*, Charge No. 1990SF0159, 1992 WL 721928, at *3 (Ill. Hum. Rts. Comm'n Aug. 12, 1992). Regardless of whether Plaintiffs or their conduct would be subject to this exemption, however, a decision to exempt some religious entities, but not others, does not destroy a law's general applicability. *United States v. Lee*, 455 U.S. 252, 261 (1982) (exemption from Social Security taxes for self-employed Amish persons, but not for persons working for Amish employers, did not violate Free Exercise Clause).

Plaintiffs are incorrect that the statutory exemption for BFOQs and Defendants' authority to accept or initiate charges under the Act are individualized exemptions that could render the Amendments not generally applicable. *Gen. Conf. of Seventh-Day Adventists v. Horton*, --- F. Supp. 3d ----, 2025 WL 1703806, at *13 (D. Md. June 18, 2025) ("Unlike in the individualized exemptions in *Fulton* [593 U.S. at 522 (2021),] and *Sherbert* [*v. Verner*, 374 U.S. 398 (1963),] that were entirely subject to the discretion of the decisionmaker, here, the [BFOQ] provision establishes an affirmative defense, available to religious and secular employers alike, subject to defined criteria." (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991))); *see also* 42 U.S.C. § 2000e, *et seq*. (Title VII). Both

---

[5] In a pre-enforcement posture with only hypothetical and conclusory allegations of harm, it is nearly impossible to say whether Plaintiffs would be able to benefit from the categorical exemption for religious corporations.

11

the BFOQ and enforcement mechanisms of the Act operate within established legal frameworks.

These inquiries are not delegated wholesale to Defendants' discretion; Defendants enforce the Act

in observance of precedential judicial and administrative decisions and the language of the statute,

all of which confine their enforcement authority. And even if these decisions *were* delegated solely

to Defendants for individual consideration, as Plaintiffs contend, such delegation would still pass

constitutional muster. *Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631, 640-41 (7th Cir. 2017)

("individualized factors" that "govern the application of a law of general applicability does not

render" law constitutionally suspect).[6]

The cases that Plaintiffs cite are inapplicable. First, Plaintiffs cite *Church of Lukumi*

*Babalu, Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544 (1993), for the proposition that a statute's

under-inclusiveness negates the statute's general applicability. Pl. Opp. 26. But *Lukumi* does not

stand for this; it stands for the proposition "that government, in pursuit of legitimate interests,

cannot in a selective manner impose burdens only on conduct *motivated by religious belief*." 508

U.S. at 543 (emphasis added). Crucially, the law at issue in *Lukumi* "require[d] an evaluation of

the particular justification for" conduct to determine whether that conduct was illegal. *Id.* at 537-

38. In contrast, the Act does not burden conduct *because* of that conduct's religious motivation.

Indeed, Plaintiffs remain free to communicate their religious beliefs in job postings. Instead, the

Act's purpose is to protect workers from unlawful discrimination. And the Act does not require

---

[6] Plaintiffs contend that *Illinois Bible Colleges* is inapplicable to this case because "the challenged statutes did not contain exemptions," whereas here, "the Act contains categorical and individualized exemptions that undermine the government's asserted interests." Pl. Opp. 27 n.2. Plaintiffs do not explain what "individualized exemptions" the Act contains, nor can they, as it contains none. And *Illinois Bible Colleges* stands for the proposition that the government can have some discretion over how a law is enforced without negating that law's general applicability, which cuts against Plaintiffs' argument that the BFOQ and charging provisions subject the Amendments to strict scrutiny.

examining the justification for discrimination based on a reproductive health choice or any other protected characteristic to determine whether that discrimination is unlawful. For the same reason, *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999), is inapposite. In *Fraternal Order*, the Third Circuit held that a regulation providing medical, not religious, exemptions from a "no-beard" policy for police officers was not neutral or generally applicable. Again, the regulation at issue required assessing the justification for maintaining a beard and treated religious justifications as inferior to secular ones. In contrast, the Act does not consider justification for discrimination at all, so it cannot treat religious justifications as inferior.

Lastly, Plaintiffs are wrong that government officials' general support for reproductive health constitutes "hostility" toward Plaintiff's religious beliefs. Pl. Opp. 29. Accepting this proposition—which is unsupported by any case law—would contravene the well-settled principle that neutral, generally applicable laws incidentally burdening religious practice are constitutional. *See Emp. Div.*, 494 U.S. at 878-79. In *Employment Division*, for example, the Court held that a law prohibiting ingestion of peyote was constitutional, even as applied to individuals for whom ingestion of peyote was a religious practice. But under Plaintiffs' contorted view, general anti-drug messaging from government officials could transform the criminalization of peyote into a law that is hostile to religion. For these reasons, the Court should dismiss Plaintiffs' Free Exercise claim.

### C. Plaintiffs' novel ministerial exception-church autonomy claim must be dismissed.

Through a combination of the ministerial exception and the church autonomy doctrine, Plaintiffs seek to conjure a categorical right to discriminate against any employee on virtually any basis. Pl. Opp. 31-32. This claim is legally unsupported and must be rejected.

First, Plaintiffs argue that they are entitled to immunity from enforcement of the Act because they claim to have multiple employees who fall under the ministerial exception and are

13

seeking to fill at least one allegedly ministerial position.[7] Pl. Opp. 30. Plaintiffs insist that they are somehow entitled to a bar from enforcement as to all current and future purportedly ministerial employees. Pl. Opp. 31. Though Plaintiffs reference having "many" ministerial employees, they do not explicitly indicate which positions in their organizations these are. *Id.* Plaintiffs thus demand a preemptive right to discriminate against an unspecified number of employees, in unspecified positions, for any reason. *Id.* at 31, 35. The ministerial exception requires an individualized determination of "whether each particular position implicate[s] the fundamental purpose of the exception," and thus cannot support such a broad and prospective claim for relief. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 758 (2020).

Plaintiffs next claim that the church autonomy doctrine—which they improperly extrapolate into a "coreligionist exception"[8]—grants them the right to discriminate against *any* of their employees on any basis as long as the discrimination is "rooted in their faith." Pl. Opp. 32. Though they purport not to claim general immunity from secular laws, *id.* at 31-32, it is hard to imagine how Plaintiffs' interpretation of this "exemption" could operate any other way. In Plaintiffs' view, any inquiry by a court into whether an organization "followed its religious belief or practice" would "unconstitutionally entangle government in religion." *Id.* at 32-33. Under this framework, nothing would stop a religious employer from claiming immunity from liability for

---

[7] Defendants do not and cannot take a position on whether these specific employees fall under the ministerial exception at this time, as the information Plaintiffs alleged about these employees is irrelevant in the context of their claimed relief. Additionally, Plaintiffs provided insufficient facts to make such a determination under the relevant test. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 758 (2020).

[8] Plaintiffs pivot in this brief away from referring to this concept as the "coreligionist doctrine" and state instead that it is "sometimes" called the "coreligionist exemption." The phrase "coreligionist exemption" appears in only one federal judicial opinion, *Darren Patterson Christian Academy v. Roy*, 699 F. Supp. 3d 1163, 1174 (D. Colo. 2023), and only insofar as it references "a separate doctrine" that the plaintiff in that case, who was also represented by Plaintiffs' counsel in this case, "terms the 'coreligionist exemption.'"

14

racial discrimination or violating minimum wage laws because such activity is "rooted in their faith."

Plaintiffs failed to address the numerous cases in which courts rejected similar attempts to create such broad immunity, including binding precedent in the Seventh Circuit. *See Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1116 (7th Cir. 2024); *O'Connell v. U.S. Conf. of Cath. Bishops.*, 134 F.4th 1243, 1258 (D.C. Cir. 2025); *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 58 (9th Cir. 2024). Indeed, though the cases Plaintiffs cite speak generally to the existence of the church autonomy doctrine, none interpreted it as broadly as Plaintiffs desire. *See Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 651, 658 (10th Cir. 2002) (holding that internal church statements were not actionable); *Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. 696, 714 (1976) (holding that the court could not intrude on defrockment of bishop or "conformity of the *members of the church* to the standard of the morals required of them" (emphasis added)). Plaintiffs' interpretation of the church autonomy doctrine is unmoored from its foundational principles and its application to anti-discrimination laws would leave countless employees without any employment protections. It must be rejected.

### D. Plaintiffs' Free Speech claim fails because the Amendments are content- and viewpoint-neutral.

Plaintiffs make many misleading and irrelevant points in support of their Free Speech claim, none of which counsel against dismissal. First, Plaintiffs' statements that the Amendments selectively prohibit only speech regarding reproductive decisions, Pl. Opp. 33-34, is false. The Amendments prohibit harassment and adverse employment decisions—both of which are unprotected *conduct*—on a wide range of enumerated bases. Nor do the Amendments "sanction religious speech that disapproves of certain reproductive decisions while leaving other views untouched," *id.* at 34: all harassment based on *any* reproductive health choice—including the

reproductive choices to become pregnant or give birth—is prohibited. For the same reason, Plaintiffs are incorrect that the Act "only 'bites' speakers who *take a critical stand* on contraception, abortion, and technology like IVF." *Id.* (emphasis added). In reality, the Act forbids *harassment* on many bases, including the choice to carry a pregnancy to term, race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, unfavorable discharge from military service, citizenship status, work authorization status, or family responsibilities. 775 ILCS §§ 5/2-101(E-1), 5/2-102(A). Plaintiffs remain free to "take a critical stand" on any topic they wish. The Amendments are therefore content- and viewpoint-neutral. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210 n.6 (1975) (prohibition on harassment is not content-based).[9]

Plaintiffs appear to concede that hiring and firing decisions are not inherently expressive, Pl. Opp. 36, which is correct as a matter of law. *Slattery*, 61 F.4th at 292. Instead, Plaintiffs contend that their employee handbooks, employment applications, and interview questions are "inherently expressive" and therefore impervious to regulation. Pl. Opp. 36. But Plaintiffs do not and cannot point to any court's acceptance of such a broad interpretation of what is inherently expressive. *See*

---

[9] *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968 (7th Cir. 2021), which Plaintiffs contend Defendants "ignore," Pl. Opp. 35, has nothing to do with the facts of this case. In *Demkovich*, the plaintiff, a minister, sued the church alleging that another minister harassed him based on his sexual orientation and other grounds. 3 F.4th at 973. The church then raised the ministerial exception as a defense to the claim of employment discrimination. *Id.* The Seventh Circuit held that under the facts of that case, the ministerial exception applied to shield the church from the plaintiff's claim. *Id.* at 985. The court's opinion was based on the premise "that ministerial employment is fundamentally distinct" because "the members of a religious group put their faith in the hands of their ministers" and a "minister is the chief instrument for a religious organization to fulfill its own voice and spread its own message." *Id.* at 978 (quotation omitted). Furthermore, the Court's commentary on religious speech was in the context of disapproval of granting "civil authorities" authority to interpret church doctrine for a hostile work environment claim *Id.* at 981. Here, Plaintiffs have not raised the ministerial exception as a defense to specific enforcement, nor is *Demkovich*—which dealt with a hostile work environment claim—relevant to Plaintiffs' free speech claim.. *Demkovich* therefore does not apply.

*Telescope Media Grp. v. Lucero*, 936 F.3d 740, 757 (8th Cir. 2019) ("An employment-discrimination law, for example, can unquestionably 'require an employer to take down a sign reading "White Applicants Only."' . . . [T]hese consequences are incidental because the relevant laws target the *activities* of hiring employees . . . which [does not] typically constitute[] speech." (quoting *Forum for Acad. & Inst. Rts, Inc.*, 547 U.S. at 62)); *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805, 819 (E.D. Mo. 2018)) ("Plaintiffs maintain that the Ordinance [restricting discrimination in employment on the basis of reproductive health decisions] prevents Plaintiffs from engaging in speech to make decisions in employment . . . consistent with their institutional missions and sincere moral and religious beliefs about human life," but "[t]o the extent that the Ordinance restricts speech, it does so only incidentally to regulating conduct and therefore does not implicate the First Amendment.").

### E. Plaintiffs' Free Speech claim also fails because the Amendments' notice requirement is factual and uncontroversial commercial speech.

Plaintiffs do not meaningfully respond to Defendants' arguments that the posted notice of employees' rights is factual and uncontroversial commercial speech subject to rational basis review under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). Plaintiffs appear to take issue with the specific language in the Department's pre-approved notice that its employees "have the right to be free from unlawful discrimination." Pl. Opp. 37. But Plaintiffs fail to explain *how* this statement is non-factual or controversial. It is a fact that, under Illinois law, employers are prohibited from discriminating against employees based on their reproductive health decisions. Indeed, that fact forms the basis of Plaintiffs' complaint.

Plaintiffs' only specific rejoinder is that the notice is nonfactual and controversial because ministers may be exempt from all anti-discrimination laws under the ministerial exception. However, again, the ministerial exception is generally raised as a fact-specific affirmative defense

17

to a particular enforcement action, not a pre-enforcement facial challenge to a statute protecting employees from discrimination. *Demkovich*, 3 F.4th 968. Plaintiffs have not provided sufficient information for this Court to adjudicate whether certain employees are exempt from anti-discrimination laws. The notice that the Act requires is factual and uncontroversial, and the requirement to post it satisfies rational basis review for the reasons previously discussed (which Plaintiffs failed to address in their opposition). Memo. 25-27. This Court should dismiss Plaintiffs' free speech claim accordingly.

    **F. Plaintiffs' Equal Protection claim fails because they did not identify a similarly situated comparison group, and because the Amendments do not unequally burden Plaintiffs.**

Plaintiffs' equal protection allegations do not state a claim. First, Plaintiffs reiterate that they are "similarly situated to employers who are treated more favorably," but they failed to explain the basis for this assertion. Pl. Opp. 38. To succeed on this kind of equal protection claim, sometimes called a "class-of-one" claim, Plaintiffs "must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citation omitted). And "[t]o be similarly situated . . . , the persons alleged to have been treated more favorably must be *identical or directly comparable* to the plaintiff in all material respects." *Id.* (emphasis added) (citation omitted). But Plaintiffs are not identical or directly comparable to, for example, a person renting out a room in a house that they also live in, 775 ILCS 5/3-106, or to a financial institution underwriting loans, *id.* at 5/4-104. Plaintiffs failed to identify a similarly situated comparison group, and they do not even attempt to negate the multiple rational bases of the Amendments. Plaintiffs thus do not allege a class-of-one equal protection claim.

Courts have also required litigants to show that the challenged law was motivated by invidious discrimination. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). One factor suggesting that animus might motivate a particular law is if it imposes a burden based on a protected classification. *Id.* But Plaintiffs failed to show any evidence of animus toward religious groups, by way of disparate impact or otherwise. First, general statements of support for reproductive choice does not constitute "target[ing]," Pl. Opp. 38, of Plaintiffs' religious beliefs. *Compare CompassCare*, 125 F.4th at 68 (no hostility toward religious beliefs where legislative history showed that law's purpose was "to prevent discrimination based on reproductive health care decisions and to promote privacy, rather than to target religion"); *with* 775 ILCS 5/1-102(A) (purpose of the Act is "[t]o secure for all individuals within Illinois the freedom from discrimination"). Second, Plaintiffs have not shown harm. There is no "chilling of faith-based speech," Pl. Opp. 38, because the Act regulates conduct, not speech. *See supra* pages 15-17. And the Amendments protect equally employees' rights to make the entire spectrum of reproductive choices—including IVF, male birth control, abortion, pregnancy, and childbirth—free from discrimination by their employers. 775 ILCS 5/1-103(O-2). Therefore, Plaintiffs' equal protection claim should be dismissed.

### Conclusion

For these reasons and those stated in Defendants' opening brief, the Court should dismiss Plaintiffs' Complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). In the alternative, the Court should order expedited jurisdictional discovery into Plaintiffs' standing to assert a pre-enforcement challenge to the Act.

Dated: July 7, 2025                         */s/ Sarah J. Gallo*
                                            Karyn L. Bass Ehler

19

Sarah Gallo
Holly F.B. Berlin
Emily Hirsch
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
312-814-3000
karyn.bassehler@ilag.gov
sarah.gallo@ilag.gov
holly.berlin@ilag.gov
emily.hirsch@ilag.gov

*Counsel for Defendants*

20