**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| THE PREGNANCY CARE CENTER OF ROCKFORD; and DIOCESE OF SPRINGFIELD IN ILLINOIS, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES BENNETT, in his official capacity as Director of the Illinois Department of Human Rights; and KWAME RAOUL, in his official capacity as Illinois Attorney General, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    No.  3:25 C 50127 <br> ) <br> )    Judge Rebecca R. Pallmeyer <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

Defendant's Motion to Dismiss [40] is granted without prejudice to the filing of an amended complaint within 21 days.  The parties are directed to confer and contact the court, also within 21 days, with a joint plan for conducting limited jurisdictional discovery.  Plaintiffs' Motion for a Preliminary Injunction [29] is stricken without prejudice to renewal following a determination that the court has jurisdiction over this case.  The court will issue a prompt ruling on such motion.

## STATEMENT

In 2024, the Illinois General Assembly passed H.B. 4867, which amends the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq., by prohibiting private employers from discriminating against employees for their "reproductive health decisions."  Under this statute, a private employer may not take action against employees for their use of contraception, fertility treatments, abortion, or other forms of reproductive health care.  Plaintiffs in this case are two religious organizations, the Pregnancy Care Center of Rockford and the Diocese of Springfield in Illinois, that assert many reproductive health decisions, most notably abortion, violate their religious beliefs.  In this lawsuit, Plaintiffs claim that H.B. 4867 is unconstitutional as applied to them because it prevents them from penalizing employees or job applicants that receive abortions, use contraception, or take other actions that violate Plaintiffs' religious beliefs, and do not repent of that conduct.  Plaintiffs bring a pre-enforcement challenge under the Civil Rights Act of 1871, 42 U.S.C. § 1983, asserting that H.B. 4867 violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, and seek a preliminary injunction barring Defendants from enforcing H.B. 4867 against them.

Defendants have moved to dismiss this case for lack of standing.  (Motion to Dismiss [40] at 2.)  In assessing the parties' arguments on this motion, the court notes, first, that because neither Defendants nor any private party have sought to enforce H.B. 4867 against Plaintiffs, the pending complaint is a pre-enforcement challenge to the statute's constitutionality.  It is well-established that "[a] party who is the target of an unconstitutional law need not expose himself to liability before challenging its constitutionality if there are 'circumstances that render the

threatened enforcement sufficiently imminent.' " *See Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014)). Instead, they have standing to sue immediately so long as they plausibly allege "an intention to engage in a course of conduct arguably affected by a policy, and that [they] face[] a credible threat the policy will be enforced" against them, when they do engage in that conduct. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (citing *Am. Civ. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590–91 (7th Cir. 2012)).

Plaintiffs contend that they face a credible threat of enforcement because they have violated (and will continue to violate) certain provisions of H.B. 4867 by virtue of having a policy of taking action against prospective and existing employees who engage in certain reproductive health behavior. (Pls.' Opp'n [42] at 17–19.) Yet it appears that the harm they fear is, for now, hypothetical. For example, Plaintiffs allege they are soliciting job applications for several open positions and will refuse to hire any applicant who has received an abortion and is "unrepentant" about that conduct. (Compl. [1] ¶ 68.) But such harm would occur only in the event that such an applicant will seek work at an organization explicitly opposed to the practice, and that the applicant will disclose her conduct and her unwillingness to repent of it, or that the information will otherwise become available. These circumstances appear to be speculative. They would also involve Plaintiffs' taking action based not on the applicant's "reproductive health decisions" but on her beliefs about those decisions; since political views are not protected by H.B. 4867, actions taken on that basis would not give rise to standing. As the Northern District of New York observed in a case involving a similar New York statute, if "an applicant who has had an abortion but has become a pro-life advocate has been, and can still be, hired, the decision not to hire a similar applicant who did not become a pro-life advocate after having an abortion is based on that applicant's beliefs, not the applicant's reproductive health decisions." *Evergreen Ass'n, Inc. v. Hochul* ("*Evergreen I*"), No. 1:20-CV-0112, 2025 WL 359074, at *5 (N.D.N.Y. Jan. 31, 2025). Indeed, Plaintiffs here themselves acknowledge that women who have previously received an abortion, but now regret it, are often effective messengers for the pro-life movement. (Hoefler Decl. [30-2] ¶ 39.)

Other questions about standing remain. Plaintiffs have not alleged that any of their employees has *ever* made an objectionable reproductive health decision, nor whether Plaintiffs have taken, or considered taking, adverse action against that employee.[1] They also do not explain how they expect to learn that employees (or applicants) have had an abortion, have used contraception, or have engaged in similar behavior, given that such sensitive information is typically private.

The court takes Plaintiffs at their word that they would take adverse action against a current or hypothetical future employee who engages in what they deem unacceptable behavior, and will assume the employee would challenge that action as a violation of H.B. 4867. But the

---

[1] Plaintiffs vaguely claim the Center and Diocese "have taken adverse action against existing employees for violating 'pro-life beliefs' and 'conduct policies in matters of human sexuality.' " (Pls.' Opp'n [42] at 20 (emphasis removed).) But discrimination on the basis of "pro-life beliefs" and sexual "conduct" is not prohibited by the Act. This allegation sweeps more broadly than the statute—if Plaintiffs terminated an employee for attending a pro-choice rally, for example, or for engaging in an extramarital affair, they would not run afoul of the Act, and Plaintiffs would thus not have standing to challenge it.

2

court doubts that hypothetical future adverse action is sufficient to support Article III standing.[2] "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury" required by Article III. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 564 (1992) (emphasis removed); *see also Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1071 (7th Cir. 2026) ("To support a pre-enforcement challenge, a future harm amounts to injury in fact if the harm is certainly impending or poses a substantial risk of occurring but not if the harm is merely possible." (citation and internal quotation marks omitted)).

At their core, Plaintiffs' claims "rest[] on their highly speculative fear" that (1) a prospective job applicant or current employee has an abortion, uses contraception, or engages in similar behavior; (2) that person applies (or continues) to work for Plaintiffs despite Plaintiffs' vehement opposition to such activities; (3) Plaintiffs discover that the individual has engaged in the disapproved behavior; (4) the applicant or employee refuses to disavow or repent for such action; (5) Plaintiffs take an adverse employment action against that individual; and (6) Plaintiffs are sued. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). It is, of course, possible that this "chain of possibilities" will occur; but, again, without more information suggesting that such events are likely, Plaintiffs' plan to refuse to hire unrepentant women who have had an abortion or used contraceptives appears to be speculative and conjectural. *See Evergreen Ass'n, Inc. v. City of New York* ("*Evergreen II*"), No. 20-CV-0580, 2025 WL 416903, at *10, 12 (E.D.N.Y. Feb. 6, 2025) ("[T]here is almost no chance that Plaintiff will face an enforcement action . . . because the individuals they hire strongly believe in and, for 40 years have abided by, the organization's values, and because Plaintiff does not police its employees' healthcare decisions or require them to self-report regarding those decisions.").

Plaintiffs also contend that they have standing to challenge H.B. 4867 because it has a chilling effect on speech. Specifically, they allege they "have written statements clarifying that they cannot hire employees who make objectionable reproductive decisions" and want "to publish these statements on career websites and job postings"—but have refrained due to fear of H.B. 4867. (Pls.' Opp'n [42] at 15–16.) To be sure, in the First Amendment context a plaintiff has standing to challenge a law if they can show that protected speech is chilled by threatened enforcement of the law. *Speech First*, 968 F.3d at 638–39. But what Plaintiffs challenge in this case is a statute that proscribes adverse employment actions—that is *conduct*, not speech. The Supreme Court has repeatedly held that statutes regulating conduct do not run afoul of the First Amendment, even if they have incidental impacts on speech of some kind. *See, e.g.*, *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992). And unlike the statute recently before the Supreme Court in *Chiles v. Salazar*, No. 24-539, 2026 WL 872307 (U.S. March 31, 2026), the government does not seek to apply H.B.

---

[2] While Defendants do have limited authority to enforce the Human Rights Act, *see* 775 ILCS 5/7-101, the Human Rights Act is primarily enforced by private individuals. Plaintiffs request declaratory relief that would ostensibly prevent *private* enforcement of the Act as well (Compl. [1] at 57–58), but the court questions whether it has the authority to issue such an equitable remedy, given that these potential private litigants are not before the court. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) ("Supposing the attorney general did have some enforcement authority under S.B. 8, the petitioners have identified nothing that might allow a federal court to parlay that authority, or any defendant's enforcement authority, into an injunction against any and all unnamed private persons who might seek to bring their own S.B. 8 suits."); *see also Ill. Pol'y Inst. v. Flanagan*, 802 F. Supp. 3d 1071, 1078–82 (N.D. Ill. 2025); *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,* 51 F.4th 1182, 1184 n.1 (9th Cir. 2022) (Berzon, J., respecting the denial of rehearing *en banc*).

4867 "to speech alone." *Id.* at *10–11. Plaintiffs have not presented a persuasive basis for chilling-effect standing here.

For now, the court concludes only that Plaintiffs' Complaint does not establish constitutional standing. The Complaint [1] is dismissed, and Plaintiffs are directed to file, within 21 days, an amended complaint that includes additional information on the extent to which Plaintiffs have disciplined employees in the past for their reproductive health decisions, and the extent to which such discipline is likely to occur in the future. The court will also grant Defendants' request for limited jurisdictional discovery. The parties are directed to confer and contact the court, also within 21 days, with: (1) a proposed plan for a compressed round of jurisdictional discovery, and (2) their views on whether an evidentiary hearing is necessary in this case. *See Craig v. Ontario Corp.*, 543 F.3d 872, 877 (7th Cir. 2008) (reversing and remanding to the district court with instructions to hold an evidentiary hearing on a jurisdictional question). Given the dismissal of the Complaint, the court will strike Plaintiffs' request for a preliminary injunction without prejudice to renewal following the filing of the amended complaint. The court will endeavor to rule promptly on any renewed application, if one is filed.

ENTER:

Dated: March 31, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

4